### FUERST v. MUSICAL MUT. PROTECTIVE UNION.

(City Court of New York, Trial Term. August 24, 1905.)

1. TRADE UNIONS—BY-LAWS—IMPOSITION OF FINES—CONSTRUCTION.

A by-law of a union of musicians, which provides that a violation of certain sections of the by-laws "shall be considered as a breach of faith, and the offender" shall be fined a fixed sum, does not authorize the imposition of fines for a violation of each of the sections, but only provides for the imposition of one fine for violations thereof.

2. SAME—LIABILITY OF MUSICAL DIRECTOR—EMPLOYING UNION MEMBERS FOR LESS THAN PRICE FIXED.

A by-law of a union of musicians, which provides that any leader engaging members to perform for less than the stipulated price shall become personally responsible for all fines that may be imposed on such members, means that, if the fines imposed on the members be not paid by them, the leader is responsible therefor, but, before he can be called on to pay, charges must be preferred and an opportunity given to defend, as expressly provided in another by-law.

3. SAME—FINE ON MEMBER—APPEAL—COMPLIANCE WITH BY-LAWS.

A by-law of a union of musicians provided for an appeal from the action of its directors imposing a fine for a violation of its by-laws. Subsequently the union affiliated with another union having different regulations governing appeals, and it was agreed that the by-laws of the former union should be adjusted in conformity with the by-laws of the latter within a reasonable time. Held, that the by-law of the former union regulating appeals governed appeals until properly amended, and a member who appealed in accordance with the by-law of the former union, prior to the adoption of the required amendment, exhausted his remedy within the union, which entitled him to redress in the courts.

4. PAYMENT—DURESS—WHAT CONSTITUTES.

A threat made by the officers of a union of musicians that, unless a member paid an illegal fine imposed, he would be expelled, causing the member to fear that, unless he paid the fine, he would be expelled and deprived of his means of earning a living, amounts to duress, entitling him to maintain an action for the fine paid.

Action by Anton Fuerst against the Musical Mutual Protective Union. Judgment for plaintiff.

Robert L. Turk, for plaintiff.
Alfred Steckler, for defendant.

O'DWYER, C. J. The plaintiff, a musical director and member in good standing of the defendant, employed 14 musicians to perform in an orchestra of which he was leader for less than the price stipulated in article 10 of defendant's by-laws. For so doing he was charged with violation and disobedience of article 12, § 8, of said by-laws, and fined therefor $100, which fine he paid, and no complaint is made with respect thereto. At the time the above-mentioned charge was preferred against the plaintiff the 14 musicians employed by him were charged with violation and disobedience of article 3, § 3, of the by-laws, and 12 of the 14 members so employed were further charged with violation of article 3, § 4, of said by-laws. Upon the hearing 12 of the men were each fined $10 for the violation of section 4, art. 3, and the fine so imposed was paid, and no complaint is made against the imposition thereof. In addition to the above fines the 14 men were fined $10 each for violation of section 3, art. 3, and the same transferred to the plaintiff; the defendant claiming that authority for its action can be found in section 8, art. 12, of the by-laws. The fines so imposed and transferred to the plaintiff, amounting to the sum of $140, he was called upon to pay, and finally did pay under protest, and this action is brought to recover back the same, on the ground that there was no warrant in law or fact for defendant's action, and that the plaintiff was compelled to pay the money under duress.

I find that the imposition of the two fines of $10 each upon 12 of the men for the violation of sections 3 and 4 of article 3 was unauthorized. Section 3 of article 12 provides that:

"A violation of the first five sections and section 10 of article 3 shall be considered as a breach of faith, and the offender shall, if found guilty, be fined for the first offense $10."

This section does not provide that for a violation of each or any section a fine may be imposed, but does provide that for a violation of the first five sections and section 10 of article 3 a fine shall be imposed. This is the only provision of the by-laws providing for a fine for violation of those sections of article 3, and the meaning is made clear, if any doubt existed, from the language employed in the section following:

"Section 4, art. 12. For transgressing against any section of article 10 [prices] a fine shall be imposed."

The men were not charged with the violation of any section of article 10, but with a violation of sections 3 and 4 of article 3.

On the other hand, if, as insisted by the defendant, the board of directors had authority to impose separate fines for the violation of each section of article 3, then there is no authority in the by-laws of the defendant for the transfer to the plaintiff of the fines so imposed. Section 8 of article 12 provides:

"That any leader engaging members to perform at any engagement for less than the price stipulated in article 10 shall be subject to an extra fine not to exceed $100, and become personally responsible for all fines that may be imposed by the board of directors upon such members engaged by him in violation of the by-laws against whom charges have been preferred."

Under this section the plaintiff was charged with engaging men for less than the price stipulated in article 10, and fined the maximum sum, which he paid. There is no provision to be found therein, directing the transfer of fines, and in fact none exists in the by-laws of the defendant. The words "become personally responsible" do not mean "become primarily liable," and there is no construction that can be given to the words that will confer authority upon the board of directors to transfer the fine of one member to another. The provision means that, if the fine is not paid by the member fined, the leader is responsible therefor, but, before he can be called upon to respond, charges must be preferred and an opportunity given for defense. No attempt was made to collect the fines from the members. They were not asked to pay them, and as far as appears were never informed of their imposition or transfer. After the hearing each received notice that he was fined $10 for violation of article 3, § 4, and paid the same, and that ended the transaction so far as they were advised or concerned. Article 13, § 1, provides that no fine shall be made, except on charges preferred, a copy of which shall be served upon the member so charged, and such member shall have a reasonable opportunity for his defense. No charge was preferred against the plaintiff with respect to the imposition of the $140 fine, and no opportunity given to present a defense. I therefore conclude that this fine was illegally imposed.

Prior to July, 1903, the only remedy given by the laws of the defendant for the review of the action of the board of directors in transferring the fines was an appeal provided for in article 4, § 7, and plaintiff duly appealed thereunder. The board of directors, at its meeting on February 3, 1904, refused to entertain the appeal, but on March 7, 1904, after defendant had been sued in the Municipal Court for relief similar to that sought herein, the board of directors rescinded its action of February 3, 1904, and directed plaintiff to appear for hearing on his appeal on March 16th; and on that day, after hearing the plaintiff, it was on motion ordered "that the appeal is not sustained." On July 9, 1903, the defendant affiliated with the American Federation of Musicians, and it is now insisted by the defendant that by reason thereof the laws of that organization governed, and that further appeals are therein provided for; that plaintiff's failure to prosecute those appeals and thus exhaust all the remedies provided in the laws governing the defendant is sufficient to defeat his claim herein. It appears that on the 9th day of July, 1903, a written agreement was entered into between a special committee appointed by the American Federation of Musicians and this defendant and another organization known as "Local 41, A. F. M. of New York City." By this agreement the musicians within the jurisdiction of Greater New York, comprising the membership of Local 41, were organized into the Musical Mutual Protective Union, to be

known as "Local 310, A. F. of M.," and the members in either or-
ganization were admitted into the new one; and, among other pro-
visions in and by said agreement, the paramount clause relative to
the issue under discussion was as follows:

"Seventh. It is further understood that such laws of Local 310, A. F. of M.,
as conflict with laws of the A. F. of M. shall be adjusted in conformity there-
with within a reasonable time."

Local 310, A. F. of M., mentioned, was the name given to this de-
fendant on and after the 9th day of July, 1903. Pursuant to said
paragraph 7, on June 28, 1904, at a meeting of the defendant's mem-
bership duly called for the purpose, the laws of the defendant were
adjusted in conformity with the laws of the American Federation of
Musicians by amending article 1, § 6 of its by-laws permitting an
appeal from the decision of the board of directors of the defendant
to the executive board of the American Federation of Musicians and
to the convention of the American Federation of Musicians. On
the 16th day of March, 1904, when the board of directors determined
plaintiff's appeal, the amendment to article 1, § 6, had not been
made, and in the absence thereof plaintiff was limited to the appeal
provided for in article 4, § 7. The determination of the appeal taken
under that section exhausted all plaintiff's remedies in the defendant
organization.

It now remains to determine whether the $140 was paid under
duress. On August 25, 1903, the fines were ordered transferred to
the plaintiff, and notice thereof given him on August 27, 1903, di-
recting payment on or before August 31, 1903. Having failed to
comply therewith, plaintiff received another notice, dated September
10, 1903, directing him to show cause on September 15, 1903, why
charges should not be preferred against him for disobedience of
the order of August 25, 1903. This meeting was adjourned to Sep-
tember 19, 1903, and plaintiff then appeared before the board of
directors, and, according to the minutes of the meeting, stated "that
he could not understand why fines levied against others could be
legally transferred to him under article 12, § 8, by-laws, and peti-
tioned for an extension of time in which to pay said fine of $140.
The matter was laid over for investigation." The plaintiff's testi-
mony with respect to what took place at this meeting is:

"I came there, and I told them I would like to know why I was brought
up here for disobedience of the board of directors, and they told me I had
not paid the $140, and I said: 'I do not see why I should pay, because I in-
vestigated, and all these 14 men paid their fines.' The board said: 'That is
not enough. You have to pay $140 also.' And I told them I did not think
that was right; that the law did not require me to do so. They said: 'You
have to do it, and, if you do not do it, suspension or expulsion will be our
course.' By defendant's counsel: Q. Who told you that?   A. The president.
Q. That was on the 19th of September, 1903?   A. Yes, sir."

The defendant's president denies having made this statement, and
several of the directors present at the meeting deny that the state-
ment was made; but after a most careful consideration of all the
testimony I believe that the plaintiff is correct in his recollection of
what was said. In connection with this finding, attention is called

to the fact that the record next made on the minutes of the board
of directors after the meeting of September 19, 1903, is under date
of October 3, 1903. Between those dates the plaintiff did nothing
toward paying the fine, and the board of directors did not announce
the result of the investigation ordered on September 19, 1903. The
minutes of October 3, 1903, contain the following entry:

"In the case of Anton Fuerst it was ordered that regular course ensue.
Final charges for October 13, 1903."

The defendant's secretary testifies with respect to this entry:

"Q. On October 3 what does 'regular course' in relation to plaintiff mean?
A. It means that final charges should ensue. Q. According to that custom
what is the usual course in the event that a member continues a violation
or disobedience of the order of the board of directors and refuses to pay the
fine? A. Usually it involves either suspension or expulsion—either one or the
other."

Here we have the secretary, in explaining the record next made
after the meeting of September 19th using the exact words that it
is charged the president addressed to the plaintiff. The secretary
further testified that the word "charges" in the entry in the min-
utes was an error; that that word should be "notice"; and that the
minutes should read "final notice" for October 13, 1903. The de-
cision of the board of directors, therefore, directed a final notice to
plaintiff, requiring payment on October 13, 1903, or, in default of
payment, that he be suspended or expelled.

It is argued on behalf of the defendant that the threat to expel
the plaintiff, if made, can add no force or effect to his claims herein,
and that it is well settled that a threat to do a lawful act is not
duress. The trouble with the defendant's position is that it threat-
ened to commit an illegal act. The action of its board of directors
in transferring fines to the plaintiff was void ab initio. The threat
contemplated depriving plaintiff of a valuable right, without cause
or justification for so doing. The plaintiff's membership in the de-
fendant is a property right, deprived of which it would be well
nigh impossible for him to practice his profession within the city of
Greater New York, and, since the affiliation of defendant with the
American Federation of Musicians, probably in all jurisdictions of
the United States and Canada, wherein the American Federation
of Musicians has a local, and by reason thereof his means of earning
a livelihood in his chosen profession would be impaired, if not
totally destroyed. It appears in the minutes kept by the board of
directors that on October 6, 1903, the plaintiff upon his personal ap-
plication was granted extension of time in which to pay fine of $140
until December 14, 1903, and that on December 22, 1903, a letter
from plaintiff, petitioning for a further extension of time in which
to pay fine of $140, was received, and on motion he was granted un-
til January 14, 1904. On January 19, 1904, he wrote the board of
directors that he wishes to be heard in person before them, as he
believes the fine unconstitutional; that he wanted to appeal his case,
but, being short of funds and the law requiring that he deposit the
full amount, it was impossible for him to do that; that, if the board

could not grant his request, then he asked for a further stay of six months, or permission to pay the fine in $10 monthly payments. On January 20, 1904, the following entry was made in the minutes respecting this letter:

> "Letter of Anton Fuerst asking that he be given a personal hearing before the board, also that he be granted further extension of time in which to pay fine of $140, rec'd and read. On motion he was granted a final extension until February 2, 1904."

On February 2, 1904, plaintiff filed an appeal from the order, transferring the fines, amounting to $140, and at the same time paid to the secretary of the defendant, under written protest and subject to his appeal, the $140 fines so transferred. In order to exhaust the remedies provided by the laws of the organization, it was necessary that plaintiff prosecute the appeal allowed by article 4, § 7, and, in order to do so, it was a prerequisite thereto that the fine imposed accompany the notice to the secretary. Prior to February 2, 1904, plaintiff had done all that a reasonable person could do to have the board of directors rescind its illegal and void order. His requests for extensions of time in which to comply therewith did not affect its validity or his position with respect thereto. He was without money, unable to appeal or pay, and the time for him to do so or be suspended or expelled was fixed. The president's threat had not been withdrawn. On the contrary, it was by resolution confirmed in the order that the "regular course ensue." Plaintiff knew that before he could appeal to the courts for relief he must exhaust the remedies provided by the laws of the organization, and to prosecute the appeal therein allowed he was compelled to pay the amount of the fine. This he did on the last day allowed, but accompanied the payment with his written protest. He feared that, if he did not pay the money on that day, the president's threat would become effective and his means of earning a livelihood in his chosen occupation destroyed. That threat, coupled with the fear induced thereby, amounts in law to duress. Coady v. Curry, 8 Daly, 58.

The fine being illegally imposed, the remedies provided by the laws of the organization exhausted, and the money obtained by duress, judgment is ordered for the plaintiff for $140, with interest from February 2, 1904, together with the costs of the action and an extra allowance of 5 per cent. Settle findings on 5 days' notice. Ten days' stay and 30 days to make a case after notice of entry of judgment.