BERNARD PHILLIPS, Plaintiff, *v.* HILMONT REALTY CORP., Defendant.

Supreme Court, Special Term, New York County, March 7, 1949.

*Jerome Doyle* for plaintiff.

*S. Berger* for defendant.

Isidor Wasservogel, Official Referee. This is an action brought by plaintiff tenant wherein he seeks an injunction restraining the defendant landlord from continuing an alleged breach of the terms of a lease between the parties.

On September 17, 1947, plaintiff entered into a written lease with the defendant for a two-year period, from October 1, 1947, to September 30, 1949, of an apartment known as "6B" in premises located at 4 East 95th Street, borough of Manhattan, city of New York. This is a nine-story building consisting of thirty-eight apartments. There is one passenger elevator for the tenants in the lobby of the apartment house and one service elevator in the rear of the premises.

Plaintiff's lease provided for an annual rental of $2,299.92, payable monthly. This rental represents a 15% increase over the amount paid to the defendant by plaintiff under a former lease. The lease also contains among other special articles not provided for in the standard form of lease of an apartment, the following covenant: "31. The landlord agrees during the term of this lease to maintain the present doormen service."

Plaintiff contends that at the time of the execution of the lease, and for many years prior thereto, the defendant provided doormen service at 4 East 95th Street on a twenty-four hour basis. Beginning in the early part of 1948, plaintiff testified that defendant began a reduction and diminution of the doormen service in effect on September 17, 1947, so that at the present time the public entrance to the premises is left unattended for periods extending from eight to fourteen hours daily.

Defendant maintains that plaintiff has an adequate remedy at law by way of an action for money damages, and contends that the tenant should be relegated to this relief or to an action for the diminution in value of the rented premises caused by the landlord's breach of the lease.

The restraining power of equity extends through the whole range of rights and liabilities which are recognized by the law. The general principle governing the determination of whether a court of equity will grant this injunctive relief may be stated as follows: Wherever a right exists or is created by contract, cognizable by law, a violation of that right will be prohibited, unless there are other considerations of policy or expediency which forbid a resort to this prohibitive remedy.

The jurisdiction in equity is, however, confined to those cases in which the legal remedy is not full and adequate. The incompleteness and inadequacy of the legal remedy is the criterion which, under the settled doctrine, determines the right to the equitable remedy of injunction (30 C. J. S., Equity, §§ 25, 37, 62; *Terner* v. *Glickstein & Terner,* 283 N. Y. 299; *Voehl* v. *Title Guar. & Trust Co.,* 266 N. Y. 662; *Fox* v. *Standard Oil Co.,* 294 U. S. 87).

It is conceded that prior to the inception of this action and down to the present time, defendant has continuously and regularly employed only two doormen at the building here involved. Each of these doormen has regularly worked on an eight-hour shift. Plaintiff's grievance, however, is not concerned with the number of doormen employed as such. The breach of contract complained of herein relates, not to the maintenance of a specific number of employees, but to the quantity of *service* rendered by them.

The evidence in this action establishes the fact that at the time plaintiff entered into the lease with the defendant, there was at all times at least one employee of the building in attendance, carrying out the various duties of a doorman. Whether these employees acted as such in neglect of their other duties in and about the premises has no bearing upon the issue here involved. Their duties as doormen were neither casual nor isolated, but rather regularly and continuously performed, thereby affording the tenants of the building this constant service and also protection. In reliance upon the continuation of this service, plaintiff granted defendant an increase in rent and entered into a new lease which guaranteed the maintenance of this obligation by the landlord.

I find that plaintiff has no adequate remedy at law. The record shows that at the present time the door leading into the lobby of the building is left open throughout the night, with no doorman on duty after 2:00 A.M. The reduction of the protection afforded by the continuous attendance of doormen greatly enhances the possibility of any person entering the apartments for evil purposes. The danger of assault or burglary is made more imminent by the lack of the service formerly maintained by the defendant. The damage to life and property resulting therefrom, though conjectural, may be irreparable. In order to avoid such consequences, equity will grant relief (Clark on Equity, §§ 49, 54).

It has long been recognized by the courts of this State that there is no distinction in an action of this kind between decreeing specific performance of a contract and enjoining its violation by

means of injunction. Defendant contends, however, that a decree of specific performance may not be granted in the instant case, as the performance of the contract calls for a succession of acts not capable of consummation by one transaction, and, therefore, would require the continued supervision of the court.

A decree of specific performance is never granted by a court of equity as a matter of right, but only after such court, in the exercise of its judicial discretion, concludes that all of the circumstances of the case warrant the granting of this relief. Plaintiff in this case is unable to take steps to remedy the situation arising from defendant's continued breach of the lease. The application of restraining measures herein falls within the general doctrine set forth in Pomeroy's Equity Jurisprudence (Vol. 4, § 1341) : '' An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrines and rules; and it may be stated as a general proposition that wherever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit. Where the agreement stipulates that certain acts shall not be done, an injunction preventing the commission of those acts is evidently the only mode of enforcement; but the remedy of injunction is not confined to contracts whose stipulations are negative; it often extends to those which are affirmative in their provisions, where the affirmative stipulation implies or includes a negative.''

Nothing in the lease between the parties prevents defendant from reducing the number of employees engaged in the management and care of the building. The defendant, however, expressly contracted to maintain certain service as it existed at the time the lease was executed by plaintiff. This promise, affirmative in substance, impliedly carried the negative covenant that the defendant would not reduce such *service,* whether to be performed by the same number, additional, or fewer men than were employed at the time the agreement was entered into. An examination of the reports of this State shows that our courts have dealt mainly with the negative side of the principle governing injunctive relief, as hereinabove set forth, and have almost ignored its affirmative aspect. As stated by Professor Pomeroy in his well-known treatise on equity jurisprudence (*supra,* Vol. 4, p. 935, n. 3) : " If ' an ounce of prevention is worth a pound

of cure, ' this tendency is clearly opposed to the best interests of society.''

By granting the relief requested herein, irreparable injury to the life and property of plaintiff, his family, and other tenants in the building may be avoided. Upon the evidence and upon equitable principles, I hold that plaintiff is entitled to continuance of the doormen service for twenty-four hours each day as it existed on September 17, 1947, which defendant in the lease to plaintiff had agreed to furnish and maintain (*Nelson* v. *Edelstein,* N. Y. L. J., Nov. 29, 1947, p. 1524, col. 4; *Goldberg* v. *Grant,* N. Y. L. J., Nov. 4, 1948, p. 1032, col. 6, mod. 274 App. Div. 993; *Marks* v. *Goldhorn Realty Corp.,* 196 Misc. 303). As plaintiff has suffered no tangible loss to date, damages are not awarded.

Judgment is rendered for plaintiff restraining defendant from continuing the breach of the agreement under which it is obligated to maintain constant doormen service, together with costs. Submit decree within ten days on three days' notice.

The foregoing constitutes the facts found by me and is the decision of the court pursuant to section 440 of the Civil Practice Act.