MARGARET FIREMAN et al., Individually and in Behalf of All Tenants, Similarly Situated, Plaintiffs, *v.* NEWCRAFT ASSOCIATES, INC., Defendant.

Supreme Court, Special Term, New York County, February 16, 1951.

*Copal Mintz* for plaintiffs.

*Morris A. Paley* for defendant.

BREITEL, J.   Plaintiff tenants in a representative action seek to enjoin defendant landlord from converting a manually operated elevator to an automatic elevator without operators in

continuous attendance and to compel the restoration of other services claimed to have been reduced or eliminated since March 1, 1943.

The premises are a fourteen-story penthouse structure of seventy-six apartments utilizing two service and two passenger elevators. Over the years in question the building operations have been maintained by fourteen to nineteen employees. It is located at West End Avenue and 77th Street in Manhattan. It is concededly a " high class " apartment house.

A number of the tenants are of advanced age and infirm. Some are invalided. There are many children of tender age.

In 1947 the predecessor landlord entered into leases with each of the tenants in the building. The leases were on the current real estate board form. They were for terms of two years. One tenant received an additional lease for a third year. They provided for " voluntary " 15% rent increases over the maximum rents provided under the Federal rent control statutes and regulations. In accordance with those statutes and regulations the leases were registered with and approved by the office of rent control in the office of the Federal Housing Expediter. This registration and approval were effected in writings known as forms D-92, which, among other things, provided: " During the term of this lease the landlord shall continue to provide substantially the same services, furnishings, and equipment as those included in the maximum rent in Item 4."

According to the testimony, in 1947, there was a diminution in service in the building as compared with 1943. The passenger elevators, as now, were manually operated. There had been nineteen employees, including a resident superintendent. There are now fifteen employees, including a nonresident superintendent. Defendant showed, however, that the heat fuel had, in the meantime, been changed from coal to oil. Plaintiffs proffered testimony of tenants to the effect that in connection with the negotiation of the 1947 leases, the predecessor landlord stated that, if the 15% voluntary increases were forthcoming from the tenants, the services in the building would be restored to their previously high standard. Such testimony was excluded by the court on the ground that it violated the parol evidence rule. (*Fogelson* v. *Rackfay Constr. Co.*, 300 N. Y. 334.) Although excluded, enough of such testimony was first received and subsequently stricken on motion in order to provide a fuller record, especially in the light of the comments of the court in *Brownrigg* v. *Herk Estates* (276 App. Div. 566).

The question that remains before the court is whether under the lease contracts plaintiffs are entitled to an injunction, and whether the D 92 forms were effective to modify the contractual obligations of the parties. Any issue as to the rights of the tenants under the regulatory statutes, Federal or State, are not determinable in the courts, but before the administrative agencies. (*Brownrigg* v. *Herk Estates, supra; Richman* v. *Fleischer,* 276 App. Div. 574; *Rogol* v. *H.R.B. Realty Corp,* 94 N. Y. S. 2d 847.)

The leases contained the now common conversion clause:

" As long as the Tenant is not in default under any of the provisions of this lease Landlord covenants to furnish, insofar as the existing facilities provide, the following services:

(a) Elevator service .................. If the building, of which the demised premises are a part, supplies manually operated elevator service, Landlord may discontinue such service upon ten (10) days' notice to Tenant without in any way affecting the obligations of Tenant hereunder, provided that within a reasonable time after the expiration of said ten (10) day period Landlord shall commence the substitution of an automatic control elevator in lieu of the manually operated elevator, and with due diligence pursue to completion the installation of such automatic control elevator or elevators."

By this provision the parties to the lease agreed that manually operated and automatic elevators were equivalent. Disregarding the legal effect of the D-92 forms for the moment, in the court's opinion this provision gave the landlord a privilege of conversion as a matter of contractual law. Whether such a provision becomes a device to circumvent the rent regulatory statutes or amount to an economic diminution of service are matters that are left exclusively to the administrative agencies.

Plaintiffs urge, however, that the D-92 forms served to vary the contract between the parties as expressed in the leases, and for this point they rely heavily upon the *Brownrigg* and *Richman* cases, cited (*supra*).

This court views the effect of the *Brownrigg* case as much narrower. The court there said (p. 571): " The new leases providing for the 15% rent increases are not in evidence, neither does it appear whether they purport expressly to dispense with any services in operation on March 1, 1943, whether they were approved by the area rent director, nor what would be the effect of any divergencies between the leases and the requirements of Form D-92. * * * These suits have not been tried on this

theory, and we express no opinion concerning its sufficiency until the facts on which it is based are more fully presented.''

In the instant case the leases dispense with the requirement of manually operated elevators. The form D-92 is now before this court for construction. As a document it is unilateral, so far as the tenant is concerned, although he must receive a copy — but after the lease is signed by him and has been filed with the rent office. It is on its face a device to effect economic control of rents and the services they buy. It is a part of the administrative machinery regulating rents. It is not a part of a contract in form or in effect. Any question as to whether the form D-92 or the earlier form was intended to affect contractual rights was removed by the 1948 revision. See the D-92 form involved in *Sterngold* v. *269 Realty Inc.* (277 App. Div. 979). There the D-92 form reads: '' During the term of this lease the landlord must provide the same services, furniture, furnishings, equipment, and living space, as required by the rent regulations, as modified by any order of the Rent Director issued since March 30, 1948.''

Passing to another point, this court cannot accept the view that elevator service requires continuous attendance of operators upon automatic elevators where the parties have agreed to make equivalent automatic elevators with manually operated elevators (*Michaels* v. *Macan Estates*, 197 Misc. 485). *Goldberg* v. *Grant* (274 App. Div. 993) is not in point because in that case the leases did not contain any conversion clause and did require '' elevator passenger service '' without qualification as to automatic elevators.

Consequently, as a matter of contractual obligation, plaintiffs are not entitled to enjoin the elevator conversion projected.

With regard to other services, concerning which there was some testimony as to diminution and contradiction by the witnesses for the defendant, the only right plaintiffs can assert is under the regulatory statutes. At the time of the making of the leases in 1947 conditions were no better than now. Only the parol conversations, if they could vary the terms of the obligation, could create a contractual obligation that could be enforced here. But such, under our law, they are powerless to do. As a result, the tenants' grievance is under the regulatory statutes, and their remedy is before the administrative agencies.

There is further ground upon which plaintiffs are limited to administrative remedies before the Temporary State Housing

Rent Commission. The leases involved have expired by their terms. While the terms of such leases are by virtue of the statutes projected during the period of the emergency, the tenants are nevertheless statutory tenants. Consequently, any rights they have are statutory, and not contractual. By the same reasoning, of course, the rights of the landlord or restrictions on the landlord, e.g., as to conversion of elevators are statutory, rather than contractual.

It is significant that the landlord applied to the Temporary State Housing Rent Commission, and received approval from the local rent office of the proposal to convert the elevators. This approval has since been affirmed by the State Rent Administrator. Conditions have been imposed in order to provide a resident superintendent at the building and such assistance as the aged, the infirm, and the very young might need in the use of the automatic elevators. The court does not say that this, in the absence of an agreement for conversion, is equivalent to continuously attended elevators; but the contract, providing as it does for conversion, does not warrant its intervention and the statutory remedies are exclusive with the administrative agencies which have acted.

One additional comment is pertinent. The Temporary State Housing Rent Commission's order in approving the elevator conversion provides: " This order does not affect any rights the tenants may have under any rental or other contractual agreement with the landlord-corporation."

This does not change the pattern. As a matter of fact, the clause adds no more than recognition of a principle of law protecting the obligation of contract from legislative or administrative encroachment. As we have seen, the lease confers the power to convert; the form D-92 is not, in this court's opinion, contractual in terms or in effect; and, moreover, the contracts have, by their own terms, expired, leaving the plaintiffs as statutory tenants.

It should be noted, too, that as a matter of broad policy the matters in issue here should be handled at an administrative level, in the absence of a clear contractual right. Any other result would clutter overcrowded courts with the detailed regulation of disputes between landlords and tenants. The issues would always be confounded, as in the instant case, by the existence of an outside administrative agency acting in the premises in the same area of control, and against a backdrop of controlled rents and rising costs, particularly for labor in the

maintenance of the buildings. It should be clear that the plan of the emergency rent laws provides flexibility in authorizing changes in services against this backdrop, with power in the administrator, subject to review for abuse by proceedings under article 78 of the Civil Practice Act, to effect a just relationship between landlord and tenant. In the absence of, contractual rights, the courts cannot intervene and, moreover, should not intervene, first, to destroy a legislatively propounded pattern, and second, to move into the courts a scheme of regulation for which the courts are not equipped. The court takes judicial notice that the Legislature did not follow the post-World War I precedent of judicial regulation of residential rents or the post-World War II precedent of judicial participation in commercial rent regulation. Deliberately, the Legislature set up a scheme of administrative regulation of residential rents and the services rendered in residential buildings.

Defendant's motions are granted. Plaintiffs' motion for judgment is denied.

Settle findings and conclusions.