JOSEPH SHONGUT, on Behalf of Himself and All Other Tenants Similarly Situated, Plaintiffs, *v.* MAURICE H. LEAVY et al., Defendants.

Supreme Court, Special Term, New York County, October 29, 1951.

*Barney Rosenstein* for plaintiffs.

*Karl Propper* for defendants.

ISIDOR WASSERVOGEL, Official Referee. This is an action to restrain the defendants, owners of an apartment house located at 205 West 89th Street and 210 West 90th Street, borough of Manhattan, city of New York, from discontinuing or diminishing certain services, including manual elevator service, twenty-four-hour uniformed doorman service and door-to-door delivery of mail, packages, newspapers and magazines.

Plaintiff, and other tenants of the premises on whose behalf this action is brought, entered into possession of their respective apartments prior to March 1, 1943, commonly known as the "freeze date." Thereafter, during the period of rent control, many of the plaintiffs entered into voluntary leases which granted the landlord a 15% rent increase. Under the Federal rent laws applicable at the time such leases were executed, the

landlord was required to file with the housing authorities a document known as "Form D-92," which contained a certification that he would maintain the registered services rendered to tenants on March 1, 1943, as set forth in Part 4 of such document. Plaintiffs contend that on March 1, 1943, it was their "general understanding" with the then landlord that the owner of the premises would continue to provide manually operated elevator services twenty-four hours per day, twenty-four-hour uniformed doorman service, accept and distribute mail, magazines, newspapers and packages directly to their apartments and maintain a telephone announcement and interapartment telephone service. Plaintiffs further contend that the execution of the voluntary 15% increase leases, which were approved by the area rent director of the Office of Housing Expediter, obligates the defendants to supply the same services which were given to them on the effective date of such leases.

Defendants admit that on February 26, 1951, they applied to the New York Temporary State Housing Rent Commission for permission to change the essential services furnished plaintiffs by the conversion of four existing passenger elevators from manual to automatic control, and that they stated in such application that the tenants' mail would thereafter be delivered through United States approved letter boxes to be installed in the lobby together with a new communication system from the vestibule to each apartment. Permission for such conversion, with certain conditions thereto, was granted by the rent commission without prejudice to the institution of the instant action by plaintiffs.

The record establishes that plaintiffs occupied their respective apartments under provisions of a standard form of Real Estate Board of New York lease. Paragraph 13 of such lease provides that if a building has manually operated elevator service, a landlord may discontinue such service upon due notice to the tenant and substitute therefor an automatic control type of elevator. Nowhere in the leases between the parties is there any requirement that the defendants supply elevator operators in the event they avail themselves of the conversion privilege referred to in Paragraph 13. It necessarily follows, therefore, that the leases, in and of themselves, do not create a contractual obligation upon the defendants to maintain manual elevator service or to employ elevator operators after conversion to an automatic control type of elevator (*Sterngold* v. *269 Realty, Inc.,* 277 App. Div. 979; *Fireman* v. *Newcraft Associates,* 200 Misc. 894). Thus it becomes necessary to look beyond the scope of

the written agreement between the parties in order to determine whether any other contractual agreement exists which would require the maintenance of service as requested by plaintiffs.

Plaintiffs' purported " general understanding " with the defendants that the tenants would continue to receive twenty-four-hour manual service operation of the passenger elevators during the entire period of their tenancy is immaterial in view of the provisions of their leases. Each of the leases under which plaintiffs occupy their respective apartments contains the express provision that the " landlord or landlord's agents have made no representations or promises with respect to the said building or demised premises except as herein expressly set forth." Furthermore, Paragraph 22 of each of the leases provides, in substance, that the lease between the parties contains the entire agreement, and that any executory agreement thereafter made would be ineffective to change, modify or discharge such lease in whole or in part unless such executory agreement was in writing. The foregoing provisions must be held binding upon both the tenant and the landlord. Concededly, a written executory agreement would, in effect, create a new contract which possibly could modify, discharge or expand upon the original lease. However, it is elementary that the parol evidence rule prohibits the proof or enforcement of any oral " general understanding " as alleged by plaintiffs which, in effect, would vary the terms of the written contracts between the parties (*Fogelson* v. *Rackfay Constr. Co.*, 300 N. Y. 334).

It is to be noted that an order of the Temporary State Housing Rent Commission, dated August 3, 1951, expressly permitted the defendants to dispense with manual elevator service. This determination is based upon the Rent Administrator's opinion that the conversion of the passenger elevators from manual to automatic operation involved no diminution of essential service. Plaintiffs in the instant action have failed to adduce any facts which warrant a contrary determination by the court. The case of *Phillips* v. *Hilmont Realty Corp.* (195 Misc. 270) previously decided by this court and cited as authority by plaintiffs in support of their contention that the intervention of a court of equity is necessary to adequately protect their rights, is inapplicable to the instant action. In the cited case, irreparable injury to the life and property of the tenant was avoided by the granting of the injunctive relief requested therein. In the case at bar, plaintiffs have not established that the conversion of the elevator service will result in irreparable injury or harm to them or their families. Unlike the defendant in the *Phillips*

case, the landlords in the instant action, under the afore-mentioned order of the Rent Administrator, have caused sufficient precautionary measures to be taken which adequately replace the protection afforded by the former presence of elevator operators. In order to make certain that the defendants maintain such precautionary measures in the future, the decree to be entered herein may provide for the maintenance of twenty-four-hour doorman service at each of the two entrance lobbies, the installation and maintenance of adequate locking devices at other entrances and gates to the basement and the installation of a modern annunciator system in the outer vestibule, as set forth in the August 3, 1951, order of the Rent Administrator.

Plaintiffs have cited *Woods* v. *Forest Hills South* (172 F. 2d 147) as authority for the proposition that the parol evidence rule is inapplicable as a bar to the introduction of evidence as to an oral " understanding " with the owners of housing premises as to the services to be supplied to tenants. It is significant to note that a contrary ruling has been made by the Court of Appeals in *Fogelson* v. *Rackfay Constr. Co.* (*supra*) which action was decided after the *Woods* case. An analysis of the *Woods* case in any event indicates that the holding of the Federal court is not relevant to the issues here involved. The *Woods* case was brought by the Housing Expediter to enforce one of his findings. The Federal court merely upheld the factual determination of the Housing Expediter that an essential service had been reduced by the landlord. In the case at bar, no such finding was made by the Rent Administrator. On the contrary, the only findings with respect thereto by the State Rent Administrator are in support of the defendants' contentions rather than those of the plaintiffs. The *Fogelson* case held that an oral agreement for services not expressly set forth in a written lease which contained a provision, as do the leases in the instant action, that it contained the whole agreement of the parties, could not be engrafted on such written lease because of the parol evidence rule. The Court of Appeals of this State, in effect, held that the fact that various services were in operation on March 1, 1943, or on a particular date when a lease was entered into, was not, in itself, sufficient to establish a contractual obligation upon the landlord to maintain such services. The Appellate Division has so interpreted the *Fogelson* case in *Brownrigg* v. *Herk Estates* (276 App. Div. 566) and in *Michaels* v. *Macan Estates* (278 App. Div. 47). It is to be noted that although it must be deemed that the Court of Appeals was aware of the decision of the Federal court in the *Woods* case, it is not referred to in its opinion.

Contrary to the contention of plaintiffs, I hold that " Form D-92 " does not constitute a written contract between the parties which obligates the defendants to maintain the services rendered by them on March 1, 1943, or as of the date on which the 15% increase leases were entered into. " Form D-92 " is merely a part of the administrative machinery of the Temporary State Housing Rent Commission regulating rents. It is entitled " Registration of Lease." The whole content thereof refers to the lease which is attached to the form at the time of filing with the rent commission. As a document, it is entirely unilateral, executed and filed by the landlord after a lease is signed by the tenant. The paper contains no covenant or agreement between landlord and tenant. The statement therein contained that " the landlord shall continue to provide substantially the same services " is a statement of the regulatory requirements of the Temporary State Housing Rent Commission. " Form D-92 " is not a contract or part of a contract in form or in effect (*Fireman* v. *Newcraft Associates, supra*). Moreover, it is significant that the " registered " services referred to in Part 4 of " Form D-92 " do not include the services now demanded by the plaintiffs. In any event, all of the issues now raised in this action have been disposed of by final order of the Temporary State Housing Rent Commission after a complete hearing at which the tenants were permitted to state their position as to the proposed change in the services being rendered to them by the defendants. In addition to the absence of proof of a contractual obligation upon the landlord to furnish services other than those ordered by the rent commission, plaintiffs have failed to establish the need for the intervention of a court of equity. Moreover, plaintiffs have failed to adduce any evidence which establishes that the determinations of the Rent Administrator were unwarranted or inequitable. It is not for the court, therefore, to substitute its judgment for that of the Rent Administrator made upon a prior hearing at which the tenants were represented (*Matter of Mingoia* v. *McGoldrick,* 106 N. Y. S. 2d 421, 423). It must be borne in mind that the rights held by plaintiffs herein, though originating in a written lease, are, nevertheless, now granted to them by statute. This statute provides for the necessary procedure which is afforded plaintiffs in the event of their desire to review the order of the administrator (L. 1946, ch. 274, § 9, as amd., see, also, § 11).

Upon the evidence before me, I, therefore, hold that the defendants are not obligated to maintain twenty-four-hour manual operation service of the passenger elevators. I further hold

that under the provisions of the leases and the order of the Rent Administrator, the defendants may legally install and operate automatic elevators in the premises here involved. As hereinabove stated, the fact that various services were in operation on March 1, 1943, or when the 15% increase leases were entered into is not, in itself, sufficient to establish a contractual obligation by the landlords to maintain such services. I hold, therefore, that there is no contractual obligation upon the defendants to continue such services as the delivery of mail, packages, newspapers, magazines and other items delivered by employees of the United States Post Office. Likewise, such incidental services which may have been rendered by the elevator attendants, such as aiding aged and infirm persons in the premises, are not contractual services which must be maintained by the defendants. Nevertheless, because of concessions made upon the record by the attorney for the defendants, the decree to be entered herein may provide for the continuation of the delivery and incidental services to be rendered by the defendants' lobby attendants, who, under the order of the Rent Administrator and the decision of this court, will be available on a twenty-four-hour basis.

Judgment is rendered for the plaintiffs only to the extent above indicated. No costs are awarded to any of the parties. Submit decree within ten days on three days' notice.

The above constitutes the decision of the court as required by section 440 of the Civil Practice Act.