HIRAM C. BARBEE et al., Respondents, v. 2639 CORPORATION et al., Appellants.

First Department, May 25, 1954.

*Stephen K. Rapp* for respondents.

*Robert S. Fougner* of counsel (*McLaughlin & Fougner,* attorneys), for appellants.

BREITEL, J. Defendants, owner and agents of buildings, part residential and part commercial, appeal from an order denying their motion to dismiss the amended complaint for insufficiency and lack of jurisdiction. Plaintiffs are statutory residential tenants. The learned Special Term stated, and the tenants on this appeal adopted his language, that '' The gravamen of the complaint is the unlawful attempt of defendants to convert a residential building to commercial or business uses and other affirmative acts in connection therewith which, it is alleged, imperil the safety of the plaintiffs ''. The relief sought is a declaratory judgment and injunction restraining defendants. The order, in our opinion, should be reversed and the amended complaint should be dismissed on the ground that the amended complaint fails to state a cause of action and that the court lacks jurisdiction.

The original complaint was dismissed on motion and leave granted to serve an amended pleading (*Barbee* v. 2639 *Corp.,* 204 Misc. 668 [Special Term, N. Y. Co., HECHT, J.]). There was no appeal.

Plaintiffs are residential statutory tenants of premises occupying a block front, the principal address of which is 270 Park Avenue. It consists of six structures, each twelve stories in height, plus a penthouse and a separate building known as the

Marguery Hotel. Plaintiff's apartments are distributed among the twelve-story buildings. All but one of the tenants have been in occupancy since before March 1, 1943, when Federal residential rent controls first became effective in New York City. Their leases have expired, and they are, therefore, statutory tenants.

The premises, constructed in 1917, originally constituted a superior luxury type of housing with interior driveway and garden court, and although located in a very busy part of Manhattan, because of the facilities and the manner of operation, provided a high degree of privacy and comfort for their tenants. Beginning in 1945, and repeatedly to date, as apartments became vacant they have been changed to commercial occupancy. By now approximately 65% of the space in the buildings is devoted to commercial occupancy. As these events have occurred the premises have been markedly changed. The garden court has been paved over; passenger elevators are used without limitation by business tenants, their employees and visitors; the automobiles of other than residential tenants are driven into the courtyard and parked for unlimited periods; mailboxes, business directories and pay telephone booths have been installed, and in general, the character of the buildings has been substantially changed from what it had been. It is also alleged that as a result of the alterations there are a number of violations of the local housing laws. In sum, the tenants complain that the calm and quiet of the premises has been disturbed; the quiet enjoyment of their apartments by plaintiffs has been impaired; and their safety and health are imperiled and injuriously affected.

The tenants have brought these matters to the attention of the State Housing Rent Commission in formal proceedings. A 10% reduction in the rents of the tenants was ordered because of the decrease in essential services.

As statutory tenants, plaintiffs' rights do not derive from contract, but exist by reason of the emergency statutes which assure their rights to occupancy. The terms of expired leases are, *pro tanto,* projected for the duration of such occupancy and for the period of the emergency (*Wasservogel* v. *Meyerowitz,* 300 N. Y. 125; *Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *Penfield* v. *Murray Hill Holding Corp.,* 281 App. Div. 675, affd. 306 N. Y. 602; *Fireman* v. *Newcraft Associates,* 200 Misc. 894 [Special Term, N. Y. Co.]). Consequently, tenants have no cause of action based on contract. Insofar as the incidents and appurtenances of their occupancy, including essential services,

are projected by virtue of the statute, those statutory rights are protected through the administrative machinery supplied under the statute (State Residential Rent Law; L. 1946, ch. 274, as amd.). Involved in the administration of the emergency statute is the maintenance, on the one hand, of rent levels for controlled housing, and on the other hand, the maintenance of essential services. Both branches of regulation reside in the administrative agency and, to the extent that the remedies available are reasonably adequate, that jurisdiction is exclusive (*Brownrigg v. Herk Estates,* 276 App. Div. 566).

A reading of the complaint, taking all of its allegations as true, as we should, clearly indicates that what tenants are referring to as their right to quiet enjoyment amounts to the variety of services that they received on the date when the emergency statute became effective. Consequently, they are matters upon which the administrative agency has the jurisdiction and power to act. With respect to violations, while these perhaps extend further than the jurisdiction of the administrative agency, they are, however, subject to enforcement by other and local administrative agencies, and, therefore, the remedy at law is adequate.

This does not mean that statutory tenants are never entitled to obtain the assistance of the courts. The contrary is true. At least when the action of the landlord is such that, if successfully carried to its conclusion, statutory tenants would be deprived unlawfully of the protection of the emergency statutes, the courts will entertain jurisdiction and grant appropriate remedy (*Gilligan* v. *Tishman Realty & Constr. Co.,* 283 App. Div. 157, affd. 306 N. Y. 974; *Judson* v. *Frankel,* 279 App. Div. 372. See, also, *People ex rel. McGoldrick* v. *Sterling,* 283 App. Div. 88).

As a matter of fact, the tenants in this case did seek redress through the administrative agency, and they obtained a form of pecuniary relief; namely, the 10% reduction in their rents. This alone would suffice to defeat their cause of action on the basic principle that one is not entitled to more than one satisfaction for his injury.

We note too, in passing, our doubts whether tenants would be entitled to relief on their complaint, assuming that there were no emergency statutes applicable and that the tenants were relying upon leases that were still extant. None of the matters concerning which the tenants complain was the subject of express covenant in the leases under which they took. It is difficult to

believe that an owner's control of his property would be so limited because portions of it are leased for commercial purposes, unless the alterations or the reduction of services not expressly covered in the leases amounted to a constructive eviction. Certainly, in their briefs, and on argument when questioned, the tenants could support no such claim with respect to the facts in this case. Surely, if the tenants could not have obtained this relief grounded upon now expired contractual rights, they cannot obtain greater rights with respect to services and maintenance of the character of the premises by virtue of the emergency statutes.

Accordingly, the order denying the motion to dismiss the amended complaint on the ground of insufficiency and lack of jurisdiction of the court should be reversed, and the motion granted, with costs.

PECK, P. J., COHN, BASTOW and BOTEIN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellants, and the motion granted.

Settle order on notice.