Matthew M. Levy, J.
(I)
The plaintiffs are residential tenants of a 10-unit multiple dwelling owned by the defendant. They seek to enjoin him from proceeding with the construction of a garage in the cellar of the premises.
A temporary injunction was granted at Special Term in favor of plaintiffs Cooper, who were lessees at the time and whose apartment would be directly affected by the structural changes; and denied as to the other plaintiffs, who had no leases and whose grievance related only to the general lobby changes. At the time of the trial, the iCooper lease had expired, and these tenants continued their occupancy by virtue of the rent and housing control laws. Upon the trial, I dismissed the complaint as to all plaintiffs other than the Coopers, and the latter will hereinafter be referred to as the plaintiffs.
(H)
The first question is one of jurisdiction of the court, the defendant asserting that there is none. His arguments, as summarized in his proposed conclusions of law, are as follows (typographical errors corrected):
“ The plaintiffs are statutory tenants and as such are in possession only by virtue of the statute (Bent Control Law) .compelling their possession.
“No authority is given under the Bent Control Law for a •statutory tenant to bring an action for injunction directly in the Supreme Court against the owner of rent controlled property.
“ Such remedy is ■ reserved exclusively to the rent administrator who has refused to exercise that remedy.
“By reason thereof, the plaintiffs have failed to state facts sufficient to constitute a cause of action and remedy being an administrative proceeding before the Bent Administration, there being an adequate remedy provided for at law, the equitable relief of injunction will not lie.”
The short answer to the defendant’s contention is that the matter has already been litigated at Special Term, and decided *450 adversely to him. He moved to dismiss the complaint under CPLR 3211 (subd. [a]) paragraphs 2 (want of jurisdiction), 4 (action pending in another court) and 7 (failure to state a cause of action), and the motions were denied. No appeal was taken from these determinations, and it is thus the law of the case that the court has jurisdiction, and that the complaint states a cause of action (see Hummel v. Hummel, 62 Misc 2d 595, 598).
It may be added, however, that even were the questions still open to determination by the trial court, the result would have to be the same. I am of the view that the availability of administrative relief will not divest a court of equity of jurisdiction when the remedy before the agency is inadequate to protect the rights of the complaining party; and, as will be seen in the discussion of the merits, only an equity court can supply adequate relief in this case.
As the Appellate Division stated in Gilligan v. Tishman Realty & Constr. Co. (283 App. Div. 157, 164 [1st Dept., 1953], affd. 306 N. Y. 974 [1954]): “ We have already, impliedly if not expressly, held that exclusive primary jurisdiction to determine the plaintiffs ’ possessory rights is not vested in the State Rent Commission, as contended by respondents (Judson v. Frankel, [279 App. Div. 372] supra; Matter of Hoenig v. McGoldrick, 281 App. Div. 663).”
The Court of Appeals affirmed the Appellate Division’s determination without opinion, although it was argued in the higher tribunal ‘1 that exclusive primary jurisdiction was vested in the State Rent Commission, and that plaintiffs had failed to establish a prima facie case.” (Reporter’s Notes, 306 N. Y. at p. 976.)
In Barbee v. 2639 Corp. (284 App. Div. 298, 301 [1st Dept., 1954]), the court noted that: “ Involved in the administration of the emergency statute is the maintenance, on the one hand, of rent levels for controlled housing, and on the other hand, the maintenance of essential services. Both branches of regulation reside in the administrative agency and, to the extent, that the remedies available are reasonably adequate, that jurisdiction is exclusive (Brownrigg v. Herk Estates, 276 App. Div. 566).” (Emphasis supplied.)
“ This does not mean that statutory tenants are never entitled to obtain the assistance of the courts. The contrary is true. At least when the action of the landlord is such that, if successfully carried to its conclusion, statutory tenants would be deprived unlawfully of the protection of the emergency statutes, the courts will entertain jurisdiction and grant appropriate *451 remedy (Gilligan v. Fishman Realty & Constr. Co., 283 App. Div. 157, affd. 306 N. Y. 974; Judson v. Frankel, 279 App. Div. 372. See, also, People ex rel. McGoldrick v. Sterling, 283 App. Div. 88).”
If, as the plaintiffs Cooper in effect maintain, a failure to grant an injunction will result in an unlawful deprivation of the protection of the rent control law, this court, as has been seen, may and must grant the writ. I therefore turn to the merits to determine whether in fact there exist circumstances warranting an injunction.
(Ill)
One change made necessary by the installation of a garage underneath the Cooper apartment is the alteration of the front room thereof. It is to be made longer and wider, and it will have two windows facing the street, whereas at the present time it has no exterior window — which, incidentally, appears to be a violation of the Building Code. Against these changes in the front room — which can only be considered as improvements, and which would certainly not, under these circumstances alone, justify the issuing of an injunction — must be weighed the impact of another alteration in the room, that a large area in the corner would have to be raised to a height three feet above that of the rest of the room. The raised area would be surrounded by a guard rail, access being by means of steps to be installed.
The basic legal question therefore is, are the Coopers, as statutory tenants, being “ deprived unlawfully of the protection of the emergency statutes ” (Barbee, supra, p. 301) ? The protection afforded by the City Rent and Rehabilitation Law (Administrative Code of City of New York, tit. Y), as set forth in § Y51-6.0 thereof, is that “ No tenant, so long as he continues to pay the rent to which landlord is entitled, shall be removed from any housing accommodation * * * by action to evict or to recover possession, by exclusion from possession, or otherwise ” (except for certain stated reasons, not relevant here). The factual question in this case thus reduces to the following -. Are the changes proposed to be made in the front room of the Coopers, on balance, a sufficient “ removal ” or u exclusion ” of the plaintiffs so as to justify the granting of the complete, permanent injunction sought by the plaintiffs?
A comparison of the plans of the room as presently constituted (blueprint — defendant’s Exhibit “ A ” in evidence), and as the defendant proposes to alter it (blueprint — plaintiffs’ Exhibit “ 7 ” in evidence), discloses that the front room of the Coopers — the “ old”, existing room, as well as the <6 new ”, *452 proposed one — is roughly a rectangle with its longer dimension on the east-west axis. The proposed platform is to he located in the northwest corner of the “ new ” room, occupying 8 feet and 6 inches .of width and 9 feet of length.[1] Virtually all the platform is in the part of the expanded room which was not in the “ old ” room, the added width of the “ new ” room being in the north, and the added length in the west. Only the southeast corner of the platform occupies space that was in the “ old ” room, taking up 2 feet of its length and 5 feet and 4 inches of its width.[2]
Even if one were to treat the entire area of the platform as useless to the plaintiffs (cf. Multiple Dwelling Law, § 4, subd. 18; § 214, subd. 1, par. b), and this need not be the case, and also treat as entirely useless the small corridor (9 feet long by 4 feet and 6 inches wide) to the south of the raised platform, then the Coopers would be left with a “ new ” room which is 2 feet shorter for 13 feet of width (only 9 feet and 10 inches of that width being in the “ old ” room), while the room is being widened by 3 feet and 2 inches for 18 feet of length — an exchange of 26 square feet less at the west end (less than 20 square feet from the “ old ” room), for 57 square feet more along the north side.
I thus fail to be persuaded that the plaintiffs are sufficiently harmed by the proposed change to warrant my enjoining the defendant fully, as requested by the plaintiffs. It must be recalled that, their leases having expired, they do not now have the benefit of any contractual obligation on the part of the defendant, and must look for relief only to the rights granted them by the Legislature. And it is axiomatic that, in the rendition of its judgments, a court of equity speaks as at the time of the decree, not as at the time of the institution of suit.
*453 I am not holding that the negative factors do not warrant some sort of relief under the circumstances; all I conclude is that they do not justify an unconditional injunction.
(IV)
The first of these arises from the fact that in the application by the defendant, presented to the Department of Buildings of the City of New York, for a permit to make the alterations, he stated that he wanted the garage for the use of the tenants. In fact, it was indicated before me that they had no automobiles and did not desire a garage, and that the defendant intended to use the garage for his own personal purposes. Had the application been truthful, it is urged by the plaintiffs, the board would not have granted the permit.
That is an issue that should be directly and formally resolved, at least in the first instance, by the administrative agency itself. (Cf. State of New York v. New York Movers Tariff Bur., 48 Misc 2d 225, 233 [1965].) In this circumstance the plaintiffs are given 30 days from the date of the publication of this opinion within which to make such application to the Department of Buildings as they may be advised.
(V)
In consonance with the proof presented upon the trial, and the submission of counsel in argument before the court, the defendant stated, in his post-trial brief, that no work to date has been done inside the Cooper apartment, that the defendant intends to apply to the Rent Administrator for permission to complete the alteration proposed and that no work will be done inside the apartment until such permission is obtained. The •defendant will accordingly be enjoined from proceeding with the construction unless and until he obtains the proper administrative approval.
Another issue argued in the post-trial briefs is whether any of the administrative determinations in the several agency proceedings already had in this ease constitute res judicata as to any of the questions before me. Suffice it to say that, so far as the record before me shows, the result I have reached is not contra-indicated by any fact heretofore found by any agency. Whether any such administrative determination is to be treated ■as dispositive in any of the subsequent agency hearings is a question for that tribunal, and not for me.
I will further enjoin the defendant from proceeding with the alterations (even if and when he obtains the appropriate agency *454 approval) unless he holds the Coopers harmless from the detrimental incidental effects of the alterations. These include, but are not necessarily limited to: paying the rent for them in nearby equivalent quarters for the period of construction; paying their moving expenses from the present premises, and return thereto; assuring them against damage to their household effects left in the apartment; and painting the front room and cleaning the apartment, after repairs are completed.
(VI)
If the defendant can obtain the proper administrative permits, and will give the assurance I have indicated, he will not be restrained from continuing with the proposed construction. Otherwise, the prayer by the plaintiffs Cooper for an injunction is accordingly granted, with the limitation and condition I have expressed. These dispositions are without prejudice to any administrative remedy to which any party may be entitled.[3]
This opinion, constituting the decision of the court (CPLR 4213, subd. [b]), makes inappropriate the proposed findings of fact and conclusions of law heretofore submitted. Settle judgment, at which time the plaintiffs may propose further specific items deemed appropriate for assurance from the defendant as aforesaid. The exhibits have been delivered to the Clerk to be returned to counsel upon due receipt therefor.

. The plaintiffs’ brief states that the platform will be 8 feet by 11 feet, while the defendant’s brief speaks about it as being 3 feet by 5 ft. The architect’s blueprint, however, clearly shows it as being 8 feet and 6 inches by 9 feet. Apparently the plaintiffs’ brief is using figures accepted in an earlier administrative proceeding, the basis for which does not appear in the record made before me. The defendant’s figures are, it would seem, those given in the blueprint of the “ old ” room as that part thereof which the platform would take up. They do not, therefore, represent the entire platform.

. The blueprint in evidence of the “old” room shows that portion of the room which will be part of the raised platform of the “ new ” room, and gives its measurements as 3 feet by 5 feet. According to my computations based on the figures given in both blueprints, however, the true measurements in that regard are 2 feet by 5 feet and 4 inches. In any event, my conclusion is the same under either set of figures.

. I am aware, of course, that, in a usual situation, "there is no point in permitting equities to harden still further by relegating tenants [or, indeed, the landlord] to the alternative of some future appearance before the Administrator” (Gilligan v. Tishman Realty & Constr. Co., 283 App. Div. 157, 164-165 [1953], affd. 306 N. Y. 974 [1954]). But, in the case at bar, all the circumstances proved upon the trial (and not excluding the fact that the pretrial granting of an injunction pendente lite maintained the status quo) warrant the exercise of my judicial discretion in this equitable suit.