(94 Misc. Rep. 729)

## ROBINSON v. DAHM et al.

(Supreme Court, Trial Term, New York County. April, 1916.)

1. ASSOCIATIONS ⚖══1—MANAGEMENT OF INTERNAL AFFAIRS—INTERFERENCE BY
COURTS—CONTRACTS.

The rule that the courts will not interfere with the internal affairs of
a voluntary association does not relieve such association from the appli-
cation of the general law of contracts.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 1; Dec. Dig.
⚖══1.]

2. ASSOCIATIONS ⚖══5—CONSTITUTION AND BY-LAWS—CONTRACTS.

So far as their provisions purport to give rights of a civil nature, the
constitution and by-laws of a voluntary association, by which the mem-
bers have agreed to be bound, constitute a contract enforceable in the
courts between the members themselves, and between the association and
the individual members.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 4–6; Dec.
Dig. ⚖══5.]

3. ASSOCIATIONS ⚖══5—RIGHT OF MEMBER—DETERMINATION—PLACE OF CON-
TRACT.

Where, in an action against two unincorporated societies, typographical
unions, plaintiff alleged that defendants had violated the constitution and
by-laws of the organizations in "laying" him off and depriving him of his
position on a "priority" list, and demanded reinstatement in such priority
and damages, his rights were determinable by the principles governing
actions for breach of contract, where specific performance is sought.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 4–6; Dec.
Dig. ⚖══5.]

4. ASSOCIATIONS ⚖══5—RIGHTS OF MEMBERS—RESORT TO COURTS—CONDITIONS
PRECEDENT.

Where the remedies provided by the constitution and by-laws of an
unincorporated association for the relief of a member who has been dis-
criminated against do not accord with natural justice, as where he is re-
quired to intrust his interest on appeal to the president of the society
after he has decided the subject of the appeal against the member, the
member will not be required to avail himself of such remedies as a con-
dition precedent to his right to resort to the courts for relief.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 4–6; Dec.
Dig. ⚖══5.]

5. ASSOCIATIONS ⚖══5—DECISIONS OF ASSOCIATION'S TRIBUNALS—REVIEW BY
COURTS.

While the courts will not overrule the decision of tribunals of an un-
incorporated association, at the instance of a member claiming to have
been wrongfully deprived of his rights, merely because of a difference of
opinion as to the merits, they will review the action taken sufficiently
to ascertain whether the tribunals followed the procedural terms of the
agreement evidenced by the constitution and by-laws, and correctly con-
strued and applied such agreement.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 4–6; Dec.
Dig. ⚖══5.]

6. ASSOCIATIONS ⚖══5—DECISION OF ASSOCIATION'S TRIBUNALS—CONCLUSIVE-
NESS—RESORT TO COURTS.

The decision of the tribunals of an unincorporated association that the
rights of a member who had been laid off and deprived of his priority
position had not been violated, since he could have applied for restora-
tion, and since, though offering to work anywhere the foreman might place

him, he failed to offer to work in any particular place, was not binding on him, where it was based on incorrect construction of the constitution and by-laws constituting the contract between him and the association.

· [Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 4–6; Dec. Dig. ☞5.]

7. TRADE UNIONS ☞4—MEMBERS—RIGHT TO EQUITABLE RELIEF.

Where a member of a labor union, an unincorporated association, is deprived of his priority position by being laid off by the association, and such action has been affirmed by the tribunals of the association to which he applies, he is entitled to equitable relief from the courts, though he has an action at law for damages from his wrongful discharge; it being no ground for denying equitable relief in respect to one wrong that the plaintiff has an adequate remedy at law for another and distinct wrong.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 3; Dec. Dig. ☞4.]

8. TRADE UNIONS ☞4—MEMBERS—GROUND FOR EQUITABLE RELIEF—ESTIMATION OF DAMAGES.

In an action against a labor union, an unincorporated association, predicated on the act of the association in depriving plaintiff of a priority position to which he is entitled under the constitution and by-laws of the association, constituting the contract between himself and the association, it is ground for equitable relief in the nature of a decree of specific performance that there is no basis on which the damages from the lessened security of his future position can be estimated.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 3; Dec. Dig. ☞4.]

Action by Fred J. Robinson against James H. Dahm, as President of Typographical Union No. 6, an unincorporated society of seven or more members, and others. Judgment for plaintiff.

Nathan I. Sachs, of New York City, for plaintiff.

James Wade Walker, of New York City, for defendants Dahm and Galvin.

HOTCHKISS, J. The plaintiff brings this action against two unincorporated societies of which he is a member—New York American and Journal chapel of Typographical Union No. 6 and Typographical Union No. 6. The chapel is a subdivision of Union No. 6, which in turn is the New York local division of the International Typographical Union. The plaintiff alleges that defendants violated the constitution and by-laws of the organization in "laying" plaintiff "off" and in depriving him of his position on the "priority list" of his chapel. For relief plaintiff demands reinstatement in such priority, together with damages for loss of wages suffered in consequence of his "lay-off" and expenses incurred in seeking reinstatement. The facts are as follows:

Upon becoming a member of the Typographical Union plaintiff must be assumed to have assented to its by-laws, including the provision that he would "at all times support the laws, regulations, and decisions" of the union. On October 15, 1906, he was employed in the shop of the New York American and Journal, whose employés are members of the New York American and Journal chapel, and, in accordance with the laws of the union, his name was thereupon placed upon the priority list of the chapel as of that date. The priority list conforms to the

dates on which the respective members are employed, and determines the order in which employés in the chapel are "laid off" when a "lay-off" becomes necessary. In a so-called departmental shop the priorities obtain within each separate department. In a nondepartmental shop the priorities exist with respect of the whole shop as a unit, regardless of departments. Section 125 of the general laws of the Union provides as follows:

"The recognition of departments shall be optional with local unions, but in no case shall a foreman transfer a person to a department he is not familiar with and then declare him incompetent. When departments are not recognized by agreement with the local union no employé shall be discharged to reduce the force or for incompetency while there is work in the office he is competent to do and to which his priority entitles him."

The Journal shop, where plaintiff was employed, was a nondepartmental shop. This shop embraced four divisions of work, viz., hand composition (in which division plaintiff was located), machine composition, proof reading, and make-up. It became necessary to reduce the force in the hand composition division. Plaintiff's priority in that division was not such as to exclude him from the proposed "lay-off," but there were enough men in other divisions of the shop with priorities inferior to plaintiff's to save plaintiff from the lay-off, provided the rule of priorities was applied to the whole shop as a unit. The chapel chairman informed plaintiff of the coming lay-off, and a conversation ensued, the particulars of which are disputed. According to defendants' testimony, plaintiff was requested to designate a specific division to which he desired a transfer; but he refused to waive his priority or to designate a particular division, as requested, and said he would leave it to the foreman to place him in any department the work of which he was competent to do. Plaintiff, on the other hand, testified that he told the chairman he would work in the proof room or machine room, but would leave it to the foreman where to place him; that the chairman, however, told him that he must accept a lay-off and could not be transferred to another division of work. The chairman reported to the foreman, who thereupon laid plaintiff off.

Plaintiff insisted he was never given an opportunity to make a specific designation of a division to which he desired a transfer. It appears that plaintiff's competence to work in at least one of the other divisions in which he had prima facie priority is unquestioned, although it does not clearly appear that the foreman had any knowledge thereof. Under the union laws the lay-off ipso facto deprived plaintiff of his priority position over men retained. On plaintiff's appeal the action of the foreman was sustained by the chapel chairman, who in turn was sustained first by the chapel and then by the president of Union No. 6. In making his decision the president stated that the case was identical with the "Langlois-McCauley case," in which he had reversed a ruling of the chairman allowing a hand composition worker to displace a machine man whose priority was inferior; the president's decision being "on the ground that the exigencies of the case required the laying off of hand men and that the union never intended that one union man should take the position of another to

save himself from a lay-off." That decision the president adopted in plaintiff's case, and it corroborates plaintiff's contention that he was told he could not be given a transfer, and consequently had no opportunity to designate a division to which he desired a transfer. The ruling of the president was, on further appeal, sustained by the executive committee of Union No. 6, of which the president was head, but upon a new ground, namely, that it was plaintiff's duty to designate the particular position he was competent to fill. These decisions were in turn reversed and a decision rendered in plaintiff's favor by Union No. 6. Thereupon the chapel chairman appealed to the executive council of the International Union, which reversed the decision of Union No. 6, and sustained the earlier decisions. The basis of the council's decision appears in the following quotation from its opinion:

"Robinson should have designated and laid claim to the position or work which he was competent to do to which his priority entitled him. His failure to do so had the effect of a waiver. As to the denial of Robinson that he was given an opportunity for decision by the chairman, this, if true, is not material. He had opportunity when he was laid off to still lay claim to any work he was competent to do and to which his priority entitled him. He should have tendered his services for such work."

No further appeal within the organization was provided for by its laws, except that Union No. 6, represented by its president, could appeal to the International Typographical Convention from a decision of the council overruling the union. At a union meeting of No. 6 plaintiff asked that he might be represented on such an appeal by some member from the floor, since it would be unfair to him to have his interests represented by its president, who had already rendered a decision adverse to plaintiff. The president ruled plaintiff's motion out of order, and no further appeal was taken. Some weeks after the lay-off plaintiff was re-employed in the Journal shop, and was thereupon replaced upon the priority list, but as of the date of his re-employment.

Plaintiff's claim for loss of wages rests in part upon or is confirmed by the undisputed "law" of the organization, as appears from the evidence and as applied in the "Langlois-McCauley case," above mentioned, the substance of which is that, when wages have been lost to a member by an improper construction of the rules or by-laws, the member is entitled to the payment of such wages by the union, "which may in its turn fix the responsibility for payment on (sic) the source from which reimbursement shall come." The following questions are presented: First, to what extent is plaintiff bound by the decisions within the organization? and, second, assuming that a right of plaintiff has been violated, is he entitled to equitable relief?

[1] As to the law covering the first question, much confusion exists in the cases in this country, apparently due to the various interpretations and applications of certain frequently stated rules, namely: (a) That the courts will not interfere with the internal affairs of a voluntary association; (b) that the courts will not interfere in disputes between such an association and a member unless a property right is involved; (c) that a member cannot appeal to the courts

for relief until he has exhausted the remedies within the organization; and (d) that the relation between an association and a member is a contract relation. The correct rule would seem to be that the principles of contract are applicable, and that the first of the three enumerated rules have validity only in so far as they are particular applications of contract principles or of the elementary principle that courts will not take jurisdiction of matters involving no property or civil rights. In other words, voluntary associations have no peculiar sovereignty relieving them from the application of the general law of contracts.

[2] So far as their provisions purport to give rights of a civil nature, the constitution and by-laws of an association by which members have agreed to be bound constitute a contract between the members themselves and between the association and the individual members. Austin v. Searing, 16 N. Y. 112, 69 Am. Dec. 665; Belton v. Hatch, 109 N. Y. 593, 17 N. E. 225, 4 Am. St. Rep. 495; White v. Brownell, 4 Abb. Prac. (N. S.) 162; Krause v. Sander, 66 Misc. Rep. 601, 122 N. Y. Supp. 54; Connell v. Stalker, 21 Misc. Rep. 609, 48 N. Y. Supp. 77. The cases involving the question of the nature of a member's right arise in most instances from expulsion, fines, and claims for benefits. The New York cases have never narrowly restricted the jurisdiction of the courts to explicit property rights or rights in property owned by the association. So long as a civil right is involved, the court has jurisdiction, as in any other case. Contract rights arising between members qua members, and between members and the association, are protected equally with the rights of members in property owned by the association. Heaton v. Hull, 51 App. Div. 126, 64 N. Y. Supp. 279; Connell v. Stalker, supra; Schouten v. Alpine, 77 Misc. Rep. 19, 137 N. Y. Supp. 380, provisionally affirmed 155 App. Div. 922, 140 N. Y. Supp. 1144, reversed 215 N. Y. 225, 109 N. E. 244, but on other grounds.

[3] My conclusion from the foregoing is that plaintiff's right to relief is to be determined by principles governing actions for breach of contract where specific performance is sought.

[4] Under the contract in this case: (1) The plaintiff must be taken to have agreed (a) to submit disputes to the organization tribunals, and (b) to support the decisions of the tribunals; and (2) the union agreed, with reasonable care and effort, to protect plaintiff's priority rights in accordance with the union laws. The agreement to submit disputes implies an agreement to exhaust the remedies available under organization procedure. The plaintiff must be held to have exhausted all such remedies. The complaint so alleges, and there is no denial. But, if this allegation were in issue, the result would be unchanged. The only appeal remaining was to the international convention, and could be taken, not by the plaintiff, but only by Union No. 6, represented by its president. The defendants contend that plaintiff could have moved at a meeting of Union No. 6 that the union take the appeal to the convention. In view of the fact that plaintiff at such a meeting unsuccessfully requested that his interests on such an appeal be represented by some member other than the president, the defendants' contention is

without merit. The court will not recognize a provision compelling plaintiff to intrust his interests on the appeal to the president of No. 6, who himself had already decided the subject of the appeal against plaintiff. Where the remedies provided do not accord with natural justice a member will not be required to avail himself of them. Corregan v. Hay, 94 App. Div. 71, 87 N. Y. Supp. 956; Matter of Brown v. Order of Foresters, 34 Misc. Rep. 556, 70 N. Y. Supp. 397, affirmed 66 App. Div. 259, 72 N. Y. Supp. 806; Id., 176 N. Y. 132, 68 N. E. 145; Fritz v. Knaub, 57 Misc. Rep. 405, 103 N. Y. Supp. 1003.

[5] The organization having rendered a final decision, the situation is analogous to that arising when, according to contract, parties have submitted a matter in dispute to arbitration. See Austin v. Searing, supra. So long as the arbitrators act according to the stipulated procedure and correctly apply the terms of the contract to the matter in dispute, they are within their authority, and the courts will review their action only to ascertain whether they have acted in good faith and in accordance with the stipulated procedure. When, however, the arbitrators attempt to pass upon the construction of the very instrument which grants and defines their authority, they act beyond the proper scope of their authority, and a provision of the contract purporting to give them such power is void, as aiming to oust the courts of jurisdiction. Halstead v. Seaman, 82 N. Y. 27, 37 Am. Rep. 536; Dodds v. Hakes, 114 N. Y. 260, 21 N. E. 398; Supreme Council v. Forsinger, 125 Ind. 52, 25 N. E. 129, 9 L. R. A. 501, 21 Am. St. Rep. 196. While, therefore, the courts will not overrule the decision of association tribunals merely because of a difference of opinion as to the merits, they will review the action taken sufficiently to ascertain whether the tribunals (a) followed the procedural terms of the agreement and (b) correctly construed and applied the substantive terms of the agreement. Ryan v. Cudahy, 157 Ill. 108, 41 N. E. 760, 49 L. R. A. 353, 48 Am. St. Rep. 305; Loubat v. Le Roy, 40 Hun, 546; Fuerst v. Musical, etc., Union, 95 N. Y. Supp. 155.

[6] It is therefore necessary to determine whether in this case the union tribunals acted within and properly applied the constitution and laws which equally defined their authority and the plaintiff's rights. As I have stated, the organization laid plaintiff off and thereby deprived him of his priority position on two grounds: First, that "the union never intended that one union man should take the position of another to save himself from a 'lay-off'"; and, second, that the plaintiff, when informed of the impending lay-off, should have designated the specific division to which he desired to be transferred, and, further, that it was immaterial whether he was given an opportunity to so designate, inasmuch as, after having been laid off, he could still have tendered his services for any work to which he considered himself entitled.

The first ground would seem to be in obvious disregard of the established fact that the Journal shop was a nondepartmental shop, and that therefore priorities were to prevail without regard for divisions of work in accordance with section 125 of the union's general laws (above quoted). As to the second ground, it may be conceded that the plaintiff would be barred of relief if the foreman of the shop had been

ignorant of plaintiff's competence in other divisions of work, and if plaintiff had actually obstructed or refused to aid the efforts of the foreman to determine his competence in such other divisions. Not only has the evidence failed to establish that such was the case, but evidence as to such facts was ruled to be immaterial by the final decision, which held that plaintiff, after being laid off, might have tendered his services in some other division. But section 125 (above quoted) definitely provides that "no employé shall be discharged" under conditions shown to have obtained at the time of plaintiff's lay-off. The final decision of the union is therefore reduced to a holding that no rights of the plaintiff were violated, for the reason that after his rights were violated he could have applied to the union to restore them.

It is further argued that under section 125 it was insufficient for plaintiff to offer to work anywhere the foreman placed him, and that it was obligatory upon him to make a specific designation of the division to which he desired to be transferred, for the reason that otherwise the foreman, upon transferring him, would be barred from discharging him thereafter for incompetence. I see no merit in this argument. Plaintiff's competence to work in at least one of the other divisions seems not to have been questioned, and the plaintiff after authorizing the foreman to place him in any division, would clearly not be in a position to invoke the rule, as if the foreman had transferred him without his consent. I conclude, therefore, that the plaintiff is not bound by the adverse decisions within the organization, as the tribunals incorrectly construed the laws which constituted the contract between plaintiff and the organization.

[7, 8] There remains the second of the two questions presented, namely: Granted that a right of plaintiff has been violated, is he entitled to equitable relief? If such relief is denied, plaintiff, in case he is discharged under such circumstances that his rightful priority position would have protected him, may sue for damages for the breach of contract in discharging him. But the possible future wrong is not the true basis of this action; plaintiff is not suing to restrain the commission of a threatened wrong. On the contrary, his action is based on a wrong already committed—the violation of his contract right to a certain priority position. Equitable relief should not be denied for one wrong on the ground that plaintiff has an adequate remedy at law for another and distinct wrong. For the precise wrong in question—the deprivation of his rightful priority position—plaintiff has no adequate remedy at law. The damages for the lessened security of plaintiff's future position, as well as for the possible consequences of the breach of contract committed, are not ascertainable. It is a ground for equitable relief in the nature of a decree of specific performance that there is no basis on which damages can be estimated. St. Regis Paper Co. v. Santa Clara Lumber Co., 173 N. Y. 149, 65 N. E. 967. I think plaintiff is entitled to the relief demanded, including as incidental relief his damages for loss of wages suffered by reason of the lay-off, with costs. Expenses of prosecuting the various appeals will not be allowed.

Judgment accordingly.