CHESTER S. MICHAELS et al., Individually and on Behalf of Themselves and All Tenants Similarly Situated, Plaintiffs, *v.* MACAN ESTATES, INC., Defendant.

Supreme Court, Special Term, New York County, January 20, 1950.

*Charles Horowitz* for plaintiffs.

*Francis G. Stapleton* and *Everett H. Erlick* for defendant.

WALTER, J. Defendant owns and operates the seventeen story and basement and pent house apartment building at the northeast corner of Broadway and 106th Street, known as 225 West 106th Street, containing 176 apartments and equipped with three passenger elevators, one of which is operated twenty-four hours a day by a human operator, another of which is so operated from 8:00 A.M. until midnight, and the third of which is so operated from midnight until 8:00 A.M.

Thirty-four of the tenants are in possession under leases which contain the provision: " The landlord will furnish to the tenant * * * elevator service "; sixteen of them are in possession under leases which provide: " Landlord covenants to furnish, insofar as the existing facilities provide * * * elevator service ". " * * * If the building of which the demised premises are a part supplies manually operated elevator service, Landlord may discontinue such service upon ten days notice to the tenant, provided that within a reasonable time after the expiration of said ten day period Landlord shall commence the substitution of an automatic control type of elevator in lieu of the manually operated elevator and with due diligence pursue to completion the installation of such automatic control elevator."

One hundred twenty-six of the tenants went into possession under leases which contained a provision identical with that last above mentioned, and since the expiration of the terms of such leases have remained in possession by virtue of statutes forbidding their eviction so long as they pay their rent. They thus are "statutory tenants" with the provisions of their leases deemed projected into their present statutory tenancy (*130 West 57 Corp.* v. *Hyman,* 188 Misc. 92; *Shelton Bldg. Corp.* v. *Baggett,* 188 Misc. 709, 710; *Richman* v. *Fleisher,* 194 Misc. 1060, 1062).

A majority of the tenants have been in possession since a date prior to March 1, 1943, and on and since that date all have been and are being supplied with elevator service by means of the three manually operated elevators above described.

In 1943 doorman service was rendered to these tenants from 8:00 A.M. to 3:00 A.M. In 1947 such service was rendered from 8:00 A.M. to 1:00 A.M. At the time of the commencement of this action, and at the present time, such service has been and is being rendered from 10:00 A.M. to 12:00 P.M. midnight, except for two and one-half hours per day and except that no doorman is on duty on Sundays until 4:00 P.M., or on Wednesdays after 4:00 P.M.

On September 26, 1949, defendant contracted with Millar elevator repair service to convert the three manually operated elevators now in the building into elevators with automatic push-button control, but with a provision in the contract for operation with or without an attendant; and a small amount of work has been done toward carrying out that contract.

By this action, three tenants, on behalf of themselves and others similarly situated seek to enjoin defendant from making the conversion so contracted for, from leaving the elevators unattended by competent operators, from leaving the entrances and vestibules unattended by doormen, and from curtailing any other services necessary to the maintenance of the building.

All the leases, it will be observed (even those which authorize the substitution of elevators of the automatic control type for manually operated elevators) expressly require the landlord to "furnish elevator service", and the controlling question in the case, it seems to me, is what those three words mean.

Does furnishing elevators constitute furnishing elevator service? I think not. Not more so, it seems to me, than furnishing taxicabs could be said to constitute furnishing taxi service.

In *Goldberg* v. *Grant* (N. Y. L. J., Nov. 4, 1948, p. 1032, col. 6) I expressed that thought in these words: "By plaintiff's lease

defendants agreed to furnish ' passenger elevator service ' and I do not think that merely furnishing an elevator which tenant himself may operate is a compliance with that agreement.''

In that case I enjoined conversion of a manually operated elevator into an automatic self-service elevator, instead of merely requiring the furnishing of an operator, and thereby granted the tenant more extensive relief than my own *ratio decidendi* warranted; and the Appellate Division modified my order so as to permit installation of an automatic elevator upon condition that it be operated and attended by an employee of defendants at all times (*Goldberg* v. *Grant,* 274 App. Div. 993).

That, it seems to me, was in effect an affirmance of my view that furnishing elevators is not furnishing elevator service, for if the Appellate Division had thought that view erroneous it would have reversed my order and not granted the tenant any relief at all.

If that be a correct interpretation of the Appellate Division decision in *Goldberg* v. *Grant* (*supra*) it is not material whether defendant's counsel is or is not correct in his assertion that various of my colleagues have decided contrary to my view, but because of the respect I have for the decisions of my colleagues I have given them attentive consideration and do not find one which I think definitely can be said to be contrary to my view.

If the provision authorizing conversion, which appears in some of the leases, stood by itself, it might be that it should be construed as authorizing elevators without operators, but as the leases which contain that provision also require the furnishing of elevator service I do not think the leases as a whole can be given that construction.

I also note in this connection that the same judge who decided *Rogol* v. *H. R. B. Realty Corp.* (N. Y. L. J., Dec. 2, 1949, p. 1480, col. 2) and *Smith* v. *Petrob Holding Corp.* (N. Y. L. J., April 6, 1949, p. 1237, col. 6) also decided *Dvorkin* v. *Tudor Properties Co.* (71 N. Y. S. 2d 307), in which conversion to automatic self-service type elevators was enjoined, as was also leaving the elevators unattended.

Defendant's counsel further asserts that my view is contrary to a ruling promulgated by the Federal Housing Expediter; and in support of that assertion he refers to a statement by that official that '' a change from manual to automatic elevators, as such, shall not be considered as a reduced service ''. That statement is not as clear as might be desired, but as I interpret it, it is in accord with my view, for it seems to me to say that the change from manual to automatic elevators, as such, (i.e. in and

of itself) is not a reduced service, and thus in effect says that if the change be accompanied by the elimination of an elevator operator it would be considered a reduction in service.

Because the complaint herein speaks of some of the tenants as " statutory tenants ", defendant's counsel seems to have gotten the idea that plaintiffs in some way base their right to an injunction upon the Federal Housing and Rent Acts (Act of 1947, 61 Stat. 199; Act of 1948, 62 Stat. 98; Act of 1949, Public Law 31, 81st Cong. 1st Sess., § 205; U. S. Code, tit. 50, Appendix, § 1896), and then upon the basis of that idea he invokes *Luftman* v. *Ross* (75 F. Supp. 627), *Fox* v. *34 Hillside Realty Corp.* (79 F. Supp. 832), and *Hock* v. *250 Northern Ave. Corp.* (142 F. 2d 435) as establishing that the right to enjoin a diminution of services in violation of that act is given by that act to the Housing Expediter alone and not to the tenants.

All that seems to me to be completely beside the point. The Federal statute above referred to perhaps enables the so-called " statutory tenants " to remain in possession despite the expiration of their leases, but it has no other relevancy to this case. The asserted right to an injunction is not in any way based upon or buttressed by that statute; it is grounded upon contract alone, viz.: the terms of the leases under which plaintiffs went into possession.

Two other arguments of defendant's counsel are of a piece with his fallacy in that regard, viz.: that plaintiffs cannot have equitable relief because they have an adequate remedy at law, and because they have not exhausted an administrative remedy available to them under the Federal statute. The suggested remedy under that statute is an application to the Housing Expediter to reduce the tenants' rent because of a diminution of services. That, however, is not the remedy these tenants want, and I can think of no principle of law that requires them to seek it in lieu of the equitable remedy of injunction to restrain the violation of their contractual rights.

The remedy at law, the existence of which will bar resort to equity, is a remedy in a court of law (*Webb* v. *Ridgely,* 38 Md. 364, 372; *Illinois Life Ins. Co.* v. *City of Chicago,* 244 Ill. App. 185, 201); and it is not here even suggested that there is any remedy in a court of law which these plaintiffs might invoke.

Defendant's final argument is that plaintiffs make no showing of irreparable damage. This, however, is a case in which they assert a legal right, viz.: a right under a contract to elevator services, and the nature of the right is such that money damages for a breach of the contract will not afford adequate or complete

relief; and in such cases the right to the equitable remedy of injunction to enforce the legal right is clear (4 Pomeroy's Equity Jurisprudence [5th ed., 1941], § 1338; *Phillip* v. *Hilmont Realty Corp.*, 195 Misc. 270), and the injunction cannot be denied as a matter of discretion upon any theory of a balancing of equities or convenience (*Whalen* v. *Union Bag & Paper Co.*, 208 N. Y. 1).

The complaint makes no charge that doorman service is about to be reduced and I find no provision in the leases with specific reference to doormen. Consequently no relief is to be granted as to that; but it is to be noted in passing that continuous attendance upon elevators will at least tend to keep the entrances and vestibules guarded against prowlers.

I conclude, therefore, that plaintiffs are entitled to judgment enjoining defendant from leaving the elevators in said building unattended at any time during the day or night by at least one competent elevator operator charged with the duty of operating said elevators upon request of or signal from tenants or other persons lawfully in the building for purposes requiring that they be transported from one floor of the building to another.

I direct the entry of judgment accordingly, with costs.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.