Nicholas M. Pette, J.
Defendants move (1) to strike out as sham all or part of specified paragraphs of the amended complaint and each of the four causes of action therein contained and (2) to dismiss each of said causes of action for legal insufficiency.
The action is to recover brokerage commissions. The gravamen of each cause of action is in substance as follows: of the *1004 first, that the corporate defendant willfully defaulted on its contract to purchase certain real property; of the second, that the corporate defendant was the alter ego of the individual defendants to whom all sums advanced on the contract were returned; of the third, that the individual defendants induced the corporate defendant to breach its contract; and of the fourth, that all of the defendants conspired to defraud plaintiffs out of their commissions on rentals.
Each and every one of the causes of action is insufficient in law. Bare conclusions, not ultimate facts, are pleaded. In the ordinary case such a conclusion would result in the granting of a motion to dismiss with leave to replead. Since, however, so far as plaintiffs are concerned, their entire case turns upon proof of their allegation that the corporate defendant willfully defaulted on its contract of purchase, and since that allegation has been challenged by defendants as sham, it would be futile to allow plaintiffs leave to replead if the allegation is in fact sham.
Defendants have marshalled the following pertinent proof that the corporate defendant did not default, much less that it did so willfully.
On or about May 24, 1956, the corporate defendant and the Bostwick Westbury Corporation entered into a contract under which the former was to purchase and the latter to sell certain real property. That contract provided, in crucial part, as follows: “20. Seller does hereby agree that this contract is subject to and contingent to the seller procuring an additional 6 months’ time from H. C. Bohack Co., Inc., in connection with the procurement of the building permit and the completion of construction. This will be done in the form of a modification of the present lease with reference to all of the terms and provisions contained therein, regarding said permit and completion of construction.”
Concomitantly with the execution of the contract of sale plaintiffs and the corporate defendant entered into a brokerage agreement in the form of a letter directed to the seller, providing in pertinent part, as follows:
“It is understood and agreed, however, that said commission [$5,000] shall not be deemed earned in the event that the contract of sale proposed or submitted you or your attorney shall not be executed and delivered to you by the purchaser or in the event that title does not actually pass from the seller to the purchaser. The aforesaid commissions will be paid by purchaser.
*1005 ‘ ‘ In the event that title is not closed for any reason whatsoever, except purchaser’s wilful default or same is rejected by the purchaser for other than wilful default, or if the seller is unable to deliver good and marketable title, no commissions or compensation shall be due or payable to the undersigned.
<< # * *
“ The undersigned real estate broker is also given the exclusive agency to rent the remainder or the unrented space in the proposed shopping center except that in no event will the purchaser be liable for any commissions due broker for any leases if title does not close and purchaser will not be obligated to sign any leases prior to closing of title. * * *
“ It is further understood and agreed that the purchaser will have the option of cancelling the exclusive agency of the broker prior to the termination of his period (viz. the completion of the shopping center) in which event the purchaser will pay the broker the sum of $2500.00 upon cancellation.”
It is undisputed that the Bohack lease required all modifications and changes to be made in writing.
At the time of the closing the attorney for the seller was requested to produce the modification of the Bohack lease in accordance with the above-quoted paragraph 20 of the contract of sale.
He stated that he could not obtain a written modification but could obtain no more than an oral promise from one Mr. Meyer, who seemed to be in charge of the tenant. Since, according to defendants, it was not known whether he had authority to bind the tenant, since the contract of sale required the modification of lease to be in writing and since the modification went to the heart of the transaction, the corporate defendant refused to take title. The parties thereupon agreed to cancel the contract. The escrow moneys were returned to the .corporate defendant and the seller paid the net title company bill.
In his (and the only) affidavit submitted in opposition to the motion plaintiff Louis Licht states in pertinent part as follows:
“ Your deponent will show, upon a trial of this action, that the reason title did not close was willful on behalf of the purchasers, and that in any event, the rejection of title which caused the termination of the deal, was not consented to by plaintiff.

u# * *

“ ¡Nowhere in the contract of sale, either in Section 20 or elsewhere, is there a requirement that the sellers should have produced a written extension of time of the H. O. Bohack Co. Ihc. lease for the completion of construction.
*1006 “ The sellers had, in fact, obtained oral assurances from Mr. Meyer of H. C. Bohack Co. Inc. that the six-month extension for construction would be given.
“ There was undoubtedly approval, which was given and accepted by the defendants and that for some reason other than the reason stated herein, the defendants chose not to proceed with the transaction.”
Upon that record the court is convinced that plaintiffs’ allegation that the corporate defendant willfully defaulted on its contract of purchase, an allegation vital to each of the four causes of action, is sham.
True, the contract of purchase did not in so many words require the seller to obtain a written modification of the Bohack lease. The contract, however, is susceptible of no other reasonable construction. The factors which this court feels compel that conclusion are as follows: This contract involved title
to real property and an important lease thereof. The corporate defendant, in the first sentence of paragraph 20 of the contract, made the contract subject to and conditioned upon the seller’s obtaining a six months’ extension of time from Bohack in connection with the procurement of the building permit and the completion of construction. But the corporate defendant was not content with that. It specified in the second sentence of paragraph 20 how the extension was to be obtained, to wit, ‘ ‘ in the form of a modification of the present [Bohack] lease with reference to all of the terms and provisions contained therein, regarding said permit and completion of construction.” This language clearly envisages the seller’s obtaining something more concrete than “ oral assurances from Mr. Meyer [of Bohack] * * * that the six month extension for construction would be given ” (emphasis supplied). Add to the foregoing the practical construction placed upon the paragraph in question by the parties themselves, ‘ ‘ a most significant factor in connection with its judicial interpretation ” (Matter of Mencher [Geller & Sons], 276 App. Div. 556, 565; see, also, Rentways, Inc., v. O’Neill Milk & Cream Co., 308 N. Y. 342, 348; Carthage Tissue Paper Mills v. Village of Carthage, 200 N. Y. 1, 14), and the conclusion seems inescapable that the contract required the seller to obtain a written modification of the Bohack lease and nothing less.
There is further basis for holding that a written modification of the Bohack lease was required. The very least effect which can be given to paragraph 20 of the contract was that the seller obtain a binding modification of the Bohack lease. That lease contained an express provision that it could not be changed *1007 orally. Such being the case, none other than a written modification of lease signed by Bohack or its duly authorized agent would do. (Real Property Law, § 282, subds. 1, 5.)
Defendants having made a prima facie showing of the falsity of plaintiffs ’ allegation of willful default, it was incumbent upon plaintiffs to come forward with proof to show that the allegation was not, in fact, false (Matter of Balsam, 275 App. Div. 687), a motion to strike as sham being decided “upon substantially the same principles attending consideration of a motion for summary judgment ” (Levy v. Jones, 269 App. Div. 295, 299). Plaintiffs have utterly failed to meet their burden of showing factually that a genuine, triable issue exists as to the corporate defendant’s allegedly willful default. Stating that such default will be shown “ upon a trial of this action ” is wholly inadequate. Pacts sufficient to raise a triable issue, not conclusions or statements of intention to prove in the future, were required in the face of the showing made by defendants.
Accordingly, defendants’ motion is granted and each cause of action is dismissed on the merits without leave to replead.
Submit order.