Vincent A. Lupiano, J.
This is an action by members of Local 282, International Brotherhood of Teamsters, etc., seeking permanently to restrain other members of Local 282 and Local 282 itself (herein called the Union) from pursuing or permitting a threatened course of conduct which plaintiffs assert contravenes the constitution and by-laws of the Union. In substance, the complaint alleges that the individual defendants, Edward McFarland, Mortimer Huggins and Raoul Pomerleau, without authority and in violation of the afore-mentioned constitution and by-laws, are attempting to call and conduct a special meeting of the members of the Union employed by the Colonial Sand and Stone Company (herein called Colonial), for the purpose of electing shop stewards on a company-wide basis — a projected illegal action and procedure which the defendant Union has failed and refused to cancel and prevent, but to which it has given implicit approval, if not active assistance. The answer admits many of the basic allegations of the complaint, sets up two affirmative defenses, viz: (1) the failure of plaintiffs to exhaust remedies within the Union, and (2) the existence of a labor dispute within the meaning of section 876-a of the Civil Practice Act; also, that plaintiffs have not complied with the provisions of the said statute. The latter defense can be disposed of summarily. The defendants admit that this *185 is an intra-union dispute, thereby bringing the case within the well-settled principle that where the controversy is wholly within the union, it does not constitute a labor dispute under section 876-a (Wolchok v. Kovenetsky, 274 App. Div. 282; La Rose v. Possehl, 156 Misc. 476; Ryan v. Simons, 98 N. Y. S. 2d 243, revd. on other grounds 277 App. Div. 1000).
After full consideration of the pleadings, testimony and exhibits the following findings are made: defendant Union, a voluntary association of more than seven members, is a labor organization composed of teamsters, chauffeurs, warehousemen and helpers employed within Metropolitan New York and Nassau and Suffolk Counties in the State of New York, about 300 or more of whose members are employed by Colonial, a corporation engaged in the general business of transporting sand, stone, concrete and other materials.
The Union and Colonial have long had contractual relations governing the terms and conditions of employment of said company’s employees; plaintiffs have long been and still are members in good standing of the Union; the individual defendants, McFarland, Huggins and Pomerleau, are members of the Union and were the sole members of the Union’s negotiating committee whose duties were strictly limited to negotiating and bargaining for the collective bargaining agreement executed by the Union and the sand and gravel industry in February, 1958; the individual defendants on the said negotiating committee are not members of the Union’s executive board, nor are they officers of the Union; for many years plaintiffs were, and still are, employed as chauffeurs by Colonial, which, in the conduct of its business, maintains 18 separate shops or barns located throughout its geographical area of operation; each shop or barn has its own complement of employees, trucks and equipment and its own shop steward, and each is subject to separate supervision; the constitution and by-laws of the Union (art. IV [a], [b]), adopted long prior to this action, and which have not been amended, provide that ‘ ‘ there must be a steward for each barn, said steward to be appointed by the local Union ”, and that the ‘ steward shall be the last man to be laid off, and shall not be discriminated against ’ ’; the constitutional grant of top seniority to shop stewards is reaffirmed and implemented in the contract between the Union and Colonial which expressly states that the shop steward in each barn shall be placed “ at the top of the barn seniority list and retain such position as long as he shall continue as shop steward ”, and that “ in the slack season, the shop steward shall be the last man laid off, and the first man rehired in his barn ”; in addition to their top seniority *186 shop stewards are not transferable from one barn to another; the Union, for many years prior to the institution of this proceeding, has in fact appointed, by its executive board or appropriate officers, a shop steward for each of the 18 separate barns maintained by Colonial, and in each such instance appointed such shop steward from among the employees in the barn, all in accordance with the Union’s constitution and Toy-laws (admitted by the pleadings); the plaintiffs are, and have at all times constitutionally functioned as the duly appointed shop stewards, respectively, of the particular barns in which they are employed; the executive board of the Union, consisting of the Union’s president, vice-president, recording secretary, secretary-treasurer and three trustees (const., etc. art. VII [1], alone is empowered to call special meetings, and no meetings are official unless called by the executive board (const., etc., art. VI [1]) ; the executive board alone is vested with the power to transact and dispose of all necessary Union business between meetings, and all other Union matters as well that are not otherwise concluded in accordance with the constitution and by-laws (const, etc., art. XII [1]); the individual defendants, with the knowledge and acquiescence of the Union and its officers and executive board, caused to be posted in the barns of Colonial, a notice calling a special meeting of the Union members employed by Colonial for the expressly announced purpose of electing shop stewards on a company-wide basis; this meeting, herein sought to be permanently enjoined, was not called by the executive board, as constitutionally required; the said meeting was ■not only in all respects illegally convoked, but the notice also falsely stated that elections of shop stewards company-wide were compelled by the contract recently concluded by the Union and Colonial — the fact being to the contrary; the Union, its officers and executive board have refused to take steps canceling or preventing the said unauthorized meeting and have, in addition, actively assisted the individual defendants with their proposed conclave to the extent of giving them encouragement and approval, supplying a hall for the meeting place.
Framing the foregoing factual picture are concessions by the defense that the individual defendants, as members of the negotiating committee, caused to be posted notices similar to plaintiffs’ exhibit 4 in the barns of other employers in the sand and gravel industry with whom the Union is under contract (the Union and an industry association apparently negotiated a master industry-wide contract to which Colonial and others became signatories); that pursuant to such notices, company-wide elections of shop stewards were held in the barns of other *187 employers, and the resultant choices thereat were accepted and recognized by the Union.
It further appears that despite an admittedly long-established constitutional practice to the contrary, and notwithstanding the lack of any explicit constitutional warrant for the selection of shop stewards on a company-wide basis, the Union is unequivocally committed to the new election procedure and desires its adoption in the Colonial barns. To quote from defendants’ trial memorandum, the Union thinks that elections of shop stewards company-wide are ‘ ‘ eminently reasonable, practical, and entirely in line with good administrative procedure ”.
Plaintiffs’ position, substantially, is that the constitutional provision for the appointment by the Union of a shop steward for each barn, has been construed by the parties for many years to mean the appointment of the shop steward for each barn from the employees employed in the particular barn, and that such construction fixes the meaning of the constitution and by-laws in such regard; that plaintiffs have an enforcible civil right, with a corresponding duty on the part of defendants, to compliance with the terms of the constitution and by-laws which would be violated by the defendants’ threatened conduct; that because of defendants’ threatened unconstitutional course, equity may grant relief without requiring a technical exhaustion of remedies within the Union by the plaintiffs; and that plaintiffs have substantial interests at stake, for the deprivation of which there is no adequate remedy at law. The defendants declare that there is no threatened departure from the Union’s constitution and by-laws; that the matter involves a mere family quarrel in the solution of which plaintiffs should have exhausted their internal remedies; and that in any event, the plaintiffs can show no property right or interest in maintaining the status quo and can point to no irreparable damage.
The court is of the opinion that the basic relief prayed for in the complaint should be granted. It is clear that the individual defendants, McFarland, Huggins and Pomerleau, attempted to act in a sphere unqualifiedly pre-empted by the constitution and by-laws as the exclusive concern of the executive board. The projected special meeting (and it was a special meeting — not just a friendly, informal “shop” gathering as defendants would suggest) was patently called without authorization, and its illegality is not cured by the Union’s acquiescence and blessing. Certainly the executive board, which alone had the power, did not call the meeting. Additionally, for reasons reviewed below, all the defendants, including the Union, must be *188 restrained because the threatened conduct contemplates a change in constitutional practice without resort to the amendment procedures set forth in the constitution and by-laws (art. XVII, §4).
The Union is an unincorporated association. It is well settled that the constitution and by-laws of such an association express the terms of a binding contract between the Union and its members and between its members, which terms define the privileges secured and the duties assumed, by those who have become members (Polin v. Kaplan, 257 N. Y. 277, 281; Browne v. Hibbets, 290 N. Y. 459, 466; Dakchoylous v. Ernst, 203 Misc. 277, 281; Fritsch v. Rarback, 199 Misc. 356, 359; Robinson v. Dahm, 94 Misc. 729, 735, 736). The right of members to secure compliance with a union’s constitution and by-laws is an enforcible one, to which the protection and aid of the courts may be invoked. Any other view would result in a denial of the contractual rights conferred by the constitution and by-laws upon all the union members equally (Browne v. Hibbets, supra; Robinson v. Dahm, supra; see, passim, Dusing v. Nuzzo, 177 Misc. 35, 37, 38, mod. and affd. 263 App. Div. 59). The constitution and by-laws under discussion provide simply that “ there must be a steward for each barn, said steward to be appointed by the Union ” (art. IV, § la). The document is silent as to the manner and circumstances of appointment and offers no guidance in the premises whatsoever. Accordingly, applying well-settled rules of law, we look to the practical construction, as evidenced in their conduct, that the Union and its members have given to it. “ There is no surer way to find out what the parties meant, than to see what they have done ” (Insurance Co. v. Dutcher, 95 U. S. 269, 273). And what the parties have done by uniform and unquestioned acts, from the outset and over a long period of time, is entitled to great, if not controlling, weight for it shows how the parties who made the contract understood it (Carthage Tissue Paper Mills v. Village of Carthage, 200 N. Y. 1, 14; Town of Pelhalm v. City of Mount Vernon, 304 N. Y. 15, 23, 24; Matter of Mencher [Geller & Sons], 276 App. Div. 556, 565; Matter of Danziger, 208 Misc. 1024, 1028; Matthews v. Burns, Inc., 205 Misc. 1006, 1015-1016; Licht v. Westbury Shopping Center, 6 Misc 2d 1003, 1006; Towers v. Doroshaw, 5 Misc 2d 241, 251; Harnett Co. v. Thruway Auth., 3 Misc 2d 257, 262).
In the ease at bar, how have the parties construed the constitutional provision governing the appointment of shop stewards? The pleadings admit and the uncontroverted record affirms that for many years prior to the instant suit, the Union, through *189 its executive board or appropriate officers, has appointed a shop steward for each of Colonial’s 18 separate barns, and in each instance appointed such steward from among the ranks in the particular barn where he was employed, all in conformity with the Union’s constitution and by-laws. The stewards at Colonial have never been chosen in any other manner or on any other basis. Thus has the Union itself, the very body whose duty it is to uphold and administer the constitution and by-laws, consistently interpreted and applied them down through the years — a construction and application universally accepted by all without question or variation. Impelling weight must attach to this official version. Such then is the contract between the Union and its members. The Union itself has spelled it out, and it may not now disavow its handiwork. This then is the constitutional manner of appointment of shop stewards, which may only be changed by formal amendment of the constitution and by-laws in the manner provided therein (art. XVII, § 4). Admittedly, the constitution and by-laws have not been amended. The attempted selection of shop stewards for Colonial’s barns on a company-wide basis is, therefore, in contravention of the said constitution and by-laws and perforce illegal.
Defendants’ threatened conduct being in clear violation of the constitution and by-laws, no technical exhaustion of remedies within the Union is necessary as a prerequisite to equitable relief. The rule requiring union members to exhaust internal remedies before resorting to the courts contemplates action by the union strictly within the scope of its powers. Accordingly, if the action of the union is without jurisdiction, or is without notice or authority, or not in compliance with the union rules or constitutional provisions, or is void for any reason, a member may appeal directly to the courts without first exhausting internal remedies (Tesoriero v. Miller, 274 App. Div. 670, 672; Daley v. Stickel, 2 A D 2d 287, 288; Sullivan v. McFetridge, 183 Misc. 106, 107, affd. 268 App. Div. 962; Rubinow v. Ladisky, 198 Misc. 225, 226; Fanara v. International Brotherhood of Teamsters, 205 Misc. 538, 540; O’Connor v. Harrington, 136 N. Y. S. 2d 881, 883, affd. as mod. 285 App. Div. 900; Wilkens v. Sofield, 144 N. Y. S. 2d 78, 81; see, too, 87 C. J. S., Trade Unions, § 49, p. 858). Moreover, the plaintiffs did in fact do all that could be reasonably required of them in the circumstances. The notices convoking the unauthorized meeting for the election of Colonial’s shop stewards company-wide, were posted on February 24, 1958. The next day, a group of shop stewards, *190 including the plaintiffs, met and discussed the problem, and, on February 26, protested orally and in writing to the Union’s vice-president and the secretary-treasurer, members of the executive board. The two Union officials admitted that the Union was furnishing and paying for the hall where the contemplated election was to take place, and refused to intervene and prevent the said illegal meeting. Noncommittal in the matter, they made it clear, however, that they intended to do nothing about the stewards’ grievance. The same group of stewards then visited John J. O’Rourke, president of the teamsters Joint Council and vice-president of the Union’s parent international. Their reception by Mr. O’Rourke was equally discouraging — the rebuff similarly pointed and final. Mr. O’Rourke told them that there was nothing he could do about it. Further appeal to a court-appointed monitor of the parent international was similarly fruitless. In these circumstances, plaintiffs were justified in concluding that their hopes of relief from the Union itself were at an end. The obligation imposed upon them as union members, if any such obligation existed in the circumstances at bar, was no more than to employ all reasonable means to utilize the remedies available to them within the Union organization, before resorting to the courts (Browne v. Hibbets, 290 N. Y. 459, 466, supra; Tesoriero v. Miller, 274 App. Div. 670, supra and cases generally, supra). It is not disputed that the Union never intended to intervene and stop the unauthorized meeting, and it is evident, from a realistic appraisal of the situation, that the Union, unless judicially restrained, will take no steps to prevent such illegal meeting in the future. Company-wide elections of shop stewards have taken place in other companies and the Union has in fact adopted the results of such procedure. Admittedly, the Union wants the same thing for Colonial. Futility, in this course, is clear and definite.
Defendants urge that the plaintiffs have no property right or interest in maintaining the status quo, and in any event can show no irreparable damages. This contention is without merit. Plaintiffs have a recognized, substantial, legally enforcible right to the specific performance of the provisions of the contract between the Union and its members. The nature of this right is such that money damages for an infringement thereof, either cannot be estimated, or do not afford adequate or complete relief. In such a case, equity’s mission to enforce the legal right is clear, namely, intervention before the threatened commission of the wrong — this, rather than subject the suppliant to an inadequate legal remedy available only subsequent to the injury. *191 Equity favors relief wMch prevents a wrong in preference to that which may afford redress (Wickwire v. Warner, 191 App. Div. 835, 839, affd. 233 N. Y. 572). Consequently, given a substantial, and not merely nominal or technical right, equity will zealously protect it against invasion, and the absence of material injury to the one seeking to enforce such a right, or the amount of inconvenience or monetary loss to the other party will have little weight in the settlement of the issue (Browne v. Hibbets, supra; Robinson v. Dahm, supra; Whalen v. Union Bag and Paper Co., 208 N. Y. 1; Evangelical Lutheran Church v. Sahlem, 254 N. Y. 161; Clinton v. Myers, 46 N. Y. 511; Schlesinger v. Quinto, 201 App. Div. 487; Michaels v. Macan Estates, 197 Misc. 485). And no theory of a balancing of equities or conveniences will sway equity if the legal right sought to be enforced or protected or defended is substantial (Clinton v. Myers, supra; Michaels v. Macan Estates, supra). Parenthetically, and over and beyond the foregoing principles, it appears to the court that whatever equities there may be are with the plaintiffs. Moreover, plaintiffs, as shop stewards, do have a substantial interest in the preservation of their top seniority and related rights as contractually fixed by the constitution and by-laws, for the illegal deprivation or diminution of which interest they have no adequate remedy at law (Robinson v. Dahm, 94 Misc. 729, 739-740, supra).
Finally, the defendants extol the allegedly superior virtues of the projected company-wide selection of stewards at Colonial, and appear to question the purity of the motives of the plaintiffs who, the defendants assert, “ for reasons best known to themselves, are attempting to frustrate an action which is both reasonable and lawful ’ \ Such considerations, regardless of merit, are wholly irrelevant here. The motives of the plaintiffs who are seeking to enforce a substantial right, are immaterial, and the plaintiffs are the sole judges whether they will accept any “ benefits ” incident to the proposed new procedure. The courts have no power to deny to a party his substantial legal right because it disapproves his motive for insisting upon it (Clinton v. Myers, supra; Evangelical Lutheran Church v. Sahlem, supra).
Therefore, the individual defendants, McFarland, Huggins and Pomerleau, totally lacking in permissive constitutional authority, as they are, will be permanently restrained from calling or conducting any meeting of those members of Building Material Local 282, I. B. of T., who are employed by Colonial Sand & Stone Co. Inc., for the purposes of electing shop stewards, or *192 in any way aiding, abetting or participating in such call or conduct.
The defendant Union, Building Material Local 282,1. B. of T., its executive board, officers, agents, representatives, employees, or any other persons purporting to act with color of authority from the Union, bound, as they are, by the Union’s existing constitution and by-laws, will be permanently restrained, unless and until appropriate amendment is made, from calling or conducting a meeting of those members of the Union who are employed by Colonial Sand & Stone Co. Inc., for the purposes of electing shop stewards company-wide, or on other unconstitutional bases; or in any way aiding, abetting or participating in such call or conduct.
The foregoing constitutes the decision of the court as required under section 440 of the Civil Practice Act.
Settle judgment accordingly.