Isjdor Wasservogel,
‘Spec. Ref. Plaintiff, a former stockholder, director and treasurer of defendant, seeks to recover from it the sum of $1,264.53, which is reflected on the corporation’s books of account as part of a reserve fund relating to a pension plan.
In 1955, plaintiff, A. J. Johannsen, Harry Krueger and J. Robert Guy were the four general agents of The Northwestern Mutual Life Insurance Company in the Borough of Manhattan. In January, 1949, an office known as “ Policyholders Service *1072 Office ” (hereinafter referred to as “ PSO ”), was established in New York City to facilitate the common premium policy collections of Northwestern’s general agents. Prom its inception until June 30, 1955, PSO operated as a branch office of Northwestern. Accordingly, PSO’s employees were covered by a Northwestern pension plan. The expense of such plan and the actual cost of the operation of PSO were charged to the four general agents by the home office and deducted from the commissions and fees collected by PSO for their benefit.
On June 21, 1955, without any prior notice, Northwestern notified its general agents in this city that, as of the end of that month, PSO would no longer be continued as a branch office and that they would have to devise an independent pension system for their employees if they intended to maintain such office as their own. Thereafter, on or about September 14, 1955, PSO was converted by the four general agents into a New York corporation, the defendant herein. These four general agents became its sole stockholders. The defendant corporation then continued the servicing functions of PSO, with the same employees who had been employed in Northwestern’s branch office remaining with the new corporation.
Prior to the incorporation of defendant, it became necessary for plaintiff and the three other agents to seek assistance from Northwestern in order to finance the pension plan for their employees at the termination of PSO. Thus, in the latter part of 1955, Northwestern agreed to pay the sum of approximately $7,000 to cover the net cost of the first year’s premium for an insurance policy obtained by the four general agents to create their new pension plan for defendant’s employees. In order to have funds available to meet the premium for the second year when it became due on July 1, 1956, the general agents agreed to have the sum of $625 per month withheld by defendant from each of their commission or collection fees.
On April 30, 1956, plaintiff retired as a general agent of Northwestern. The record shows that on that date defendant was holding for plaintiff’s account the sum of $1,264.53, which represented his share of the monthly accumulations that had been set aside from his earnings to meet the forthcoming premium payment for the second year of the pension plan policy. It is plaintiff’s contention that inasmuch as he terminated his relationship with Northwestern and the three other general agents prior to the time such premium payment became due, defendant is obligated to return these moneys which it allegedly held in trust for his use and benefit. Defendant con *1073 tends, however, that the cost of the employees’ retirement benefit plan, represented by the deductions each month from the four general agents’ income, was a corporate expense and that such moneys were not the personal property of plaintiff or the other agents. This contention is without merit.
In the opinion of the court, the $625 withheld each month from the collections and commissions of each of the four general agents was not to be deemed a corporate expense of defendant. The intention of the parties in setting up this plan and authorizing such deductions is manifestly evident from their own actions and clearly establishes that they intended these deductions to be a personal item of expense. It is significant that the general agents, including the president of the corporate defendant, reported such withholdings as income on their personal income tax returns for 1955, although, in fact, the moneys remained in defendant’s possession. If, as defendant contends, these with-holdings from their earnings were a corporate expense, each of the general agents would then have treated these deductions as a business expense on their tax returns rather than income. Moreover, it is to be noted that defendant’s own accounting system treated these moneys as the personal property of the four general agents. In the December, 1955, income report given to each general agent by defendant, there appeared an item under the heading of “ Net Income” which read as follows: “Balance due general agent for reserve for pension premium”. In subsequent months, the income reports submitted by defendant to each general agent referred to his net income as “ less monthly pension plan reserve.” Thus, applying a well-settled rule of law that the practical construction of an arrangement between parties may be determined by what they themselves have done pursuant thereto (Caliendo v. McFarland, 13 Misc 2d 183), I find that it was the intention of plaintiff and his associated general agents that the moneys collected by defendant from their earnings be held in trust for their personal use and benefit to meet the future contingency of a pension plan premium payment due on July 1, 1956.
Contrary to defendant’s contention, the funds that were accumulated monthly from plaintiff’s income were not held by it in a restricted or committed reserve. As above noted, these moneys were not set aside to meet a current obligation. They were being accumulated to meet a contingent obligation which might or might not arise on July 1, 1956. By the terms of article IX of the pension plan, it is significant that such plan could be terminated at any time. Thus, the amount of plain *1074 tiff's obligation thereunder or that of any of the other three agents was at all times uncertain and unfixed. The death, resignation or other termination of employment of any one of the members covered by such pension plan would materially effect the premium payment for the second year and, necessarily, the amounts to be paid by each general agent.
The moneys deducted from plaintiff's earnings were set aside by defendant to care for an obligation which, if it arose, would cover a premium year commencing two months after plaintiff's retirement as a general agent. Obviously, plaintiff would derive no benefits from the continuance of the pension plan for a period subsequent to his retirement. It follows, therefore, that in the absence of an express contractual agreement, which defendant has not shown to exist here, plaintiff may not be required to contribute to such pension premium after the effective date of his resignation. Ooncededly, as defendant argues, had Northwestern conditioned its payment on the first year's premium on the creation of a restricted reserve to take care of the second year’s premium, plaintiff then would have been bound by such commitment. The credible testimony and documentary evidence, however, fails to establish that such commitment was ever obtained by Northwestern or that the four general agents themselves agreed to set up anything more than a free and unrestricted reserve fund in order, to have moneys available if and when the second year’s premium became due on their newly created employees’ retirement pension plan.
Upon the evidence before me, therefore, I hold that plaintiff is entitled to recover from defendant the accumulations now held by it in trust for him.
Judgment is rendered in favor of plaintiff against defendant in the sum of $1,264.53, together with interest thereon from May 1, 1956.
Defendant may have a 10-day stay of execution.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.